Ruffin, Chief Justice.
 

 — Several exceptions are taken to the instructions in this case. Those principally discussed and relied on relate to the opinions expressed by the Court on the extent and effect of the defendant’s possession. Having refused to give certain instructions prayed for by the defendant’s counsel, the court laid it down to the jury, that' “ when two persons were in possession of parts of their lands, covered by paper titles which lop, neither having any actual possession within the loppage, the law adjudged the possession in him who had the elder title; but where the holder of the elder title was in possession of no part of the land covered by his title, and he who had the younger title was in possession of any part of the land covered thereby, although such possession might not be within the loppage, the law adjudged his possession co-extensive with his title, notwithstanding its loppage upon an elder title, of which there was no possession.” The materiality of this instruction to the rights of the parties, upon the facts stated in the record, is not perceived. For if the two tracts conveyed by Murray to Mills are to be regarded as one, so that the entry by Mills into either portion is an entry into the other portion of the entire tract, then Mills had made such an entry, within the admission of the plaintiff’s counsel, for he was actually possessed of that part of the French patent which the patent to Burnett also covered. If, on the other hand, the two tracts continued several after the conveyance to Mills, then the possession on the one could not embrace the other, unless the other instruction, which will be hereafter noticed, be correct: which would render the one now under consideration un-
 
 *552
 
 neeessary and immaterial. We might, therefore, be relieved from passing on this, without omitting any duty to the parties. But we conceive the doctrine involved in the instruction to be of such importance as to entitle it to notice; and since the opinion of this Court upon one part of it is to be contrary, that we are not at liberty to give to it the sanction of our silence.
 

 To the former of those positions we fully subscribe. If a part of a tract of land be covered by two deeds, and he who has the better title be in possession, not of that, but of another part of his tract, he has, by legal intendment, the actual possession of the whole, unless the other have a possession within the intersecting lines. Why ? For the plain reason, that both parties cannot, at the same time, be seized of the same land, under their respective deeds; and therefore, he who has the title is deemed in the exclusive possession, since he can have no action against the other for any possession by him.
 

 The same reason applies with equal force to the case supposed in the latter branch of the instructions; from which this Court dissents. The error, as it is esteemed by us, has its root in an assumption of fact, which is not warranted by the law, and is contrary to a legal presumption. It assumes that the true owner is not in possession. Now that cannot be, unless another have the actual possession ; for, by force of his title, he has constructively the possession until it be destroyed by an adverse possession; and there can be no adverse possession, against which the owner cannot have an action to recover the possession. The question is, what sort of possession in another will terminate that which the owner has by construction, so as to enable him to say, that he is out of possession, and to demand it from the other ? Certainly, as we think, it must be an actual possession of some part of
 
 his
 
 land. If the possession be outside the interference, he cannot maintain ejectment; for that can be done only by showing a trespass on the premises,
 
 described in the declaration,
 
 that is, within the boundaries of his own deed. In the case supposed there is no such trespass ; for the actual possession of him who is considered the wrong doer, is admitted not
 
 *553
 
 to be within the land of the other. It is not correct to state, therefore, that the owner is out of possession, because he is not actually seated on any part of his land. His possession exists in his whole tract, until some part of
 
 that
 
 be, usurped by another, so as to oust him from that part, and there can be no such usurpation but _ by occupation within the better title. In
 
 Fitzrandolph
 
 v.
 
 Norman,
 
 N. C. Term Reports, 132, it is laid down, that “ persons owning adjoining tracts of land, which lop upon each other,
 
 neither being in the actual possession of the part covered by both conveyances,
 
 will'be deemed in possession according to the title.” Here it will be perceived, that as being an immaterial circumstance, no notice is taken of possession, on either side, of those parts of the tracts not covered by both deeds. In the recent case of
 
 Green
 
 v.
 
 Harman, 4
 
 Dev. 158, the Court took the rule as settled,
 
 “■
 
 that if there be two patentees, the entry of the younger on his own land does not oust the other, unless it be on that part of the land covered by both titles,” In
 
 Dobbins
 
 v.
 
 Stephens,
 
 ante 5, it was repeated in these words: “ if neither claimant be in actual possession of the land covered by both deeds, the seisin is in the.owner, but if one of them be on that part, and the other not, then the possession of the whole interference is in the former,”' Why?. Because he can then be sued for the whole. We find the same doctrine established in.other states situated like our own. In Kentucky it was thus held, in
 
 Frimble
 
 v.
 
 Smith,4
 
 Bibb, 257, and in
 
 Smith
 
 v.
 
 Mitchell,
 
 1 Marshall, 207. In
 
 Talbot
 
 v.
 
 M‘Gavock,
 
 1 Yerger,262, the Judges of the Supreme Court of Tennessee admit it to be clearly so.at common law, and under our act of 1715; and the majority of the Court, in able opinions, maintained it as applicable to a new statute of that state, which enacted that “ any person holding seven years peaceable possession of land under a grant or deed, shall be entitled to hold possession, in preference to all other claimants, of
 
 such quantity of land as shall be specified in his or her grant or deed.”'
 
 Notwithstanding these last words, it was adjudged, that a possession of “ the disputed land” was meant; and, therefore, that where the part actually occupied is not within the
 
 *554
 
 bounds of the elder title, the owner is not barred. Indeed it would be strange, if the law were against the fact, to construe an entry into part to which the party had right, to be also an entry into another part to which he had no right; a construction the more harsh and unjust, because the sole effect of it is to put out him who has the right, without giving him any remedy therefor.
 

 The Court further instructed the jury, that, under the circumstances stated in the exception, Mills was in 1817, in the adverse possession of the tract granted to Cook, so as to prevent the deed then made by Burnett, from passing any title in that tract to the lessor of the plaintiff. To this instruction several objections are taken.
 

 It is urged, first, that the entry of Burnett into any part of the land, covered both by his. deed, and that to Mills, claiming the whole, vested the possession of the whole in him, and determined the possession of Mills; and that the acceptance of the deed for the whole from Burnett, by the lessor of the plaintiff, then in the occupation of the small piece on the north side of the river, is equivalent to such an entry by Burnett himself. This objection goes much beyond the claim of the plaintiff in the Superior Court, and, if well founded, would render the deed effectual for the French, as well as the Cook tractwhich seems not even to have been contended on the trial. We think, however, that it is not tenable as to either.
 

 Without considering all the purposes to which an entry the owner into part may enure, or to what extent an entry on a trespasser may determine his possession, the Court agrees that such an entry so far reinstates the owner ,n the possession, as, at the least, to render his conveyance, , . , ... . ,
 
 “
 
 sealed and delivered, on the land, valid; and that it may {je q1Q samej when he convevs to one who is already in possession, as well as the other trespassers, and claiming adversely to him. But this principle cannot reach a case in which the two possessions supposed are clearly of different portion °f the land, as distinct parcels. The owner may be disseised of one part of the same tract of land by one Persori> and of another part by another person, each claiming the part in his own possession, and not claiming
 
 *555
 
 the other. A recovery from one does not disturb the other; much less will the entry upon one oust the other. Here Carson and Mills had such several possessions of distinct parcels of the French grant. Neither was answerable for the wrong of the other, and the owner might obtain com-píete redress against one, without seeking any from the other. There was no entry, in fact, upon Mills, and we cannot, without going beyond the intentions, at the time, of the parties themselves, say that his possession — as far as it extended — was legally terminated or suspended by the entry on Carson, or by the deed to him, while in possession of a particular parcel, under a different claim. The only question, then, is, how far Mills’s possession legally extended. It was a real
 
 positio fudis
 
 on the French grant.-, and therefore the lessor of the plaintiff undoubtedly acquired no title to that part, and the instruction is not upon this objection, erroneous.
 

 We are then brought to the inquiry, whether Mills also had possession of the Cook grant, to which the instruction is, by its terms, confined. If he had not, the deed to the lessor of the plaintiff passed that, and the plaintiff was entitled to a verdict; and, consequently then, ought to have a new trial. There was no actual possession of it, indeed; no clearing, on it by Murray, Mills, or any other person, until Burnett leased from Mills in 1829.
 

 The principle, on which his Honor proceeded, is, that possession of part is the possession of the whole; and here Mills lived on part of the disputed land •, that is, on what is covered by both deeds. We think the principle does not reach this case. Upon a reason similar to that on which the preceding objection was deemed invalid, namely, the division of the land into distinct parcels, we think the rule was misapplied to this part of the case. The doctrine, from its nature, can only relate to an entire thing; a possession of part being a possession of the whole — of what ? of that of which it is a part; and not of that which is separated from it. It is contended, however, that these tracts were united and became one, because the same person owned both, and acquired them by the same conveyance. Neither of these circumstances necessarily tends to such a
 
 *556
 
 conclusion, nor do they in conjunction. The law gives possession to the owner of land not occupied by another. But where the title is not derived by a conveyance, but is set up as constituted by possession, it must be an actual and not an ideal possession. Of the same nature must be the possession of a trespasser, to render the deed of the owner inoperative. Now the owner and occupant of a piece of land may purchase another piece, adjoining; and if his title to it be good, he is in possession without more doing. Even in that case, the several parcels do not necessarily lose their distinct character, and sink into one whole. They may do so, for many purposes, if the owner so regards them, and a great variety of circumstances may satisfy the mind that his intention was the one way or the other; as giving a general name, or cultivating as one plantation, or the reverse. But it cannot be admitted that they are united for any purpose, by the mere facts of being claimed by the same person, and being adjoining to each other; and much less, that they can thus become united, to the prejudice of third persons. The purchase simply, or any declarations of the purchaser, unaccompanied by acts on the land, give no action to the owner; at least, none founded on his possession, as continuing, or as being ousted. Burnett could not have brought ejectment against Murray for the Cook land, upon his purchase of it in 1802, for that being the
 
 only parcel
 
 described in the declaration, the possession of the defendant must be shown to be within
 
 that.
 
 Although Murray might have given a general name to both, under which both would have passed as one tenement under his will, or by his deed; yet he did not occupy any part of the Cook grant, and, for the reasons before given, was, consequently, not in possession of it, so as to oust Burnett therefrom. Did the deed to Mills produce a new state of things, and make what was not a possession in Murray become a possession in Mills ? Ordinarily, not more than one tract is conveyed in the same deed; for if the vendor acquired the estate in several contiguous parcels, when united in him as to the title or the claim of title, and sold together, they are usually surveyed together, and described as a single tract. Hence the purchaser, in pos
 
 *557
 
 session of any part of the land conveyed by that deed, is said to be in possession of the whole, and according to his deed, for the deed professes to pass but one thing. But to make them one whole, by force of a conveyance of them to the same person, and by the same instrument, the change of character ought explicitly to appear in the conveyance. He who actually succeeds to nothing more than the actual possession of his predecessor, ought not to require, presumptively, a larger actual possession, unless it be clear on the deed, that he did not take the estates as the other had them, and, therefore, did not hold them as he held them. If the description be not by a common name, or by lines going around both, but be of each tract as of a separate parcel, not stating even that they adjoin, the idea of undivided unity is excluded. Such, we think, is the character of the deed set out in the exception. Upon the most favourable construction for the defendants, it is but equivocal. It purports to convey all the “ tract or tracts, pieces or parcels of land lying on the south side of. Green river, included in two surveys, to wit: The first tract containing one hundred acres, beginning, &c. and granted to S. French, on the 25th day of March, 1780: Also one other fifty acre tract, beginning, &c. and granted to B. Cook, on the I8th day of November, 1801; the above tracts supposed to include by estimation, one hundred and fifty acres, more or less; which said pieces or parcels of land, he, the said P. Murray, doth hereby bargain and sell unto the said John Mills, and his heirs.” The only word on which a plausible argument for the entirety of the land, can be founded, is “ tract” in the beginning. But the effect of that is neutralised by those immediately succeeding, “ or
 
 tracts, pieces or parcels.”
 
 These expressions alone might leave it doubtful in what sense the parties understood their contract. If so, it ought not to be taken most favourably for them against third persons. But that doubt is, in our opinion, removed by what is subsequently stated, and omitted in the deed. It proceeds to denominate the land as “
 
 the first tract,”
 
 and as “
 
 also one other tract
 
 and particularly describes each by its several boundaries, according to the patent for it, and in the
 
 habendum
 
 clause
 
 *558
 

 again
 
 calls them
 
 tracts, pieces, parcels,
 
 and omits the fact of their contiguity. There is then nothing in the deed common to both, but the consideration and the warranty ; which may as well be where the two tracts are remote, as where they adjoin. If they were, in fact, remote, the propriety of this qualification of the rule, that possession of part is the possession of the whole, would be manifest. That shows that the whole meant is that which is
 
 according to the deed,
 
 a whole. If that be true, it follows, that, although they adjoin, yet if they be not described as adjoining, so that it might be seen that they were to pass as one entire thing, they must pass as distinet parcels, according to their respective boundaries; and the possession of one cannot be the possession of the other; for that would
 
 not
 
 be according to the deed. Mills was not more liable to the aetion of Burnett, in respect of the Cook tract, merely upon his purchase and his entry into the French tract, than Murray was upon his purchase of the Cook tract, and previous and continuing occupation of the other. In other words, the possession of one tract of land, as such, is not the possession of another tract, although they happen to adjoin. There must be an actual occupation of some part of eaeh, to oust their respective owners.
 

 Upon the' construction of the patent to Walton, the opinion of the Court is against the plaintiff. We do not understand the judge as laying down a general position, that the call for another’s line is to be disregarded, if it had not been marked, and was to be ascertained by running the course and distance from a given point. Wé cannot so understand him, for if that point be known the line must be certain. We take the language with the context, and with a reference to the case before the court; and, so considered, we concur in opinion with his Honor. The object in all boundary questions is to find some certain evidence of what particular land was surveyed, or was intended to be conveyed. Course and distance approaches very nearly to permanent certainty if any one of the
 
 termini
 
 be identified; and that is the usual description. But there may be a defect in the instrument, so as to run the line inaccurately; or there may be a mistake in setting
 
 *559
 
 down the course and distance. If, therefore, other things be called for, as to which there is less probability of error, they shall control the other calls. Such is the case where the call is for a natural boundary; with respect to which there is but little fear of mistake at the time of the survey, and but little difficulty in identifying it at a subsequent period, But even in that case, evidence mav show which is, for . v 7 instance, the stream called for, or which the parties took to be that to which they have given the namethough the necessity for such evidence seldom arises, because parties cannot readily fall into such mistakes. When the call is for the line of another, it has also been held that course and distance may yield to it. But it is, obviously, not so decisive as the call for a natural boundary; and the mind may be under a perfect conviction, from other circumstances, that the mistake is not in the course and distance, but in supposing that the other had a line at the end of the course and distance. If that conviction exists, there ought to be no deviation from course and distance. Such, it seems to us, is the case here. If, for instance, the line be proved, satisfactorily to the jury,to beat a particular place, and they can collect that at the time of the conveyance, in which it is called for, it was an established line, known or reputed to be there, which is to be presumed
 
 prima facie,
 
 then it affords a' ground for the further presumption that the parties meant to go to it. So if the call be for a particular identified corner of the tract. Thus we understand the rule, as laid down by Chief Justice Taylor in
 
 Cherry
 
 v.
 
 Slade,
 
 3 Murph. 90. But if the jury be satisfied that, at the time of the survey, there was no known line, and that it was understood by the parties to be at a different place from what it turns out to be, we think they must abide by the course and distance. As evidence upon these points, that is, whether there was a known line, and which is the line meant or understood by7 the parties, the facts that the line was marked or unmarked, that the eorners were or were not previously identified, that the owner claimed up to a particular line as his, or that there was no previous claim or reputation, are most
 
 *560
 
 material. If the jury believed upon all these points, in the negative, then such a line, although it can now be ascertained mathematically, ought not to conclude; because it does not furnish as probable and rational
 
 data,
 
 for the ascertainment of the actual location, as the course and distance. It would be appealing from evidence, certain to a common intent, to a thing altogether unknown to the parties at the time. This, we take it, was the meaning of the charge to the jury; and we deem it proper in the particular case. Only the first line of the French tract was marked, and the other four were open, and there was no evidence that any one of the four was known, even by reputation, or that any person lived on the land or claimed to any particular points. The line called for, if it be that now ascertained, cannot be reached in any one of the methods claimed by the plaintiff, without adding greatly to his quantity of land, inserting another line in his survey and patent, and including a large portion of the land previously granted to Cook. These circumstances afford almost conclusive proof that this was not the line called for, and that the parties believed that Murray owned the land between Cook and Walton, as laid down in the plot, and that his line began at the termination of that of the Harvey patent, and pursued the same course. If so, the call ought not to overrule the other calls, which are certain in themselves.
 

 The Court is also of opinion, that the plaintiff could not give evidence of other trespasses of the landlord himself. He did not become sole defendant, as claiming title to all the land mentioned in the plaintiff’s declaration; of a great part of which, indeed, the lessor of the plaintiff was, himself, in possession. But he united with Burnett in his defence; that is, to show that the plaintiff had no title to the land in Burnett’s possession. It might not be necessary in such a case to prove Burnett in possession of any particular place, as against the landlord; who admits him to be in possession as his tenant, by engaging to defend him. But it would be a surprise, if he were called on to defend for other portions of the land; which the plaintiff’s
 
 *561
 
 own evidence would show had not been in Burnett’s possession. This case is, in this respect, nearly the converse of that of
 
 Gorham
 
 v.
 
 Mooring,
 
 2 Dev. Rep. 174.
 

 But for the errors on the other points, the judgment must be reversed and a
 
 venire de novo
 
 awarded.
 

 Per Curiam. Judgment reversed.