In the defendant's appeal it is found, and so adjudged by the Court, that there is no error in the proceedings or judgment.
No error.
PLAINTIFF'S APPEAL. (101)
I feel compelled to differ from the conclusions reached by the majority of the Court in this case, and I will state my reasons as briefly as possible.
This is an action brought to recover a triangular tract of land delineated on the map as beginning at A, running to B, thence to D, and back to A. The plaintiff's appeal involves the proper location of the first line of Grant No. 3290. The beginning corner of this grant is admitted by all parties to this action to be correctly located, and is shown on the court map at the letter A. The description of Grant 3290 may be analyzed as follows:
1. A tract of land containing 10,000 acres.
2. Lying in Macon County, Section No. _____, District No. _____.
3. Being part of the lands lately acquired, etc.
4. Bounded as follows, viz.:
5. On the waters of Hazelnut Creek.
6. Beginning at a chestnut oak on a trail leading from the mouth of Sugar Fork Creek to the Deep Gap.
7. Beginning and running with Col. T. D. Bryson's line.
8. Eighteen hundred poles north to the Tennessee line at the head ofDefeat Ridge.
9. Cornering with Bryson's northeast corner.
10. Thence east 700 poles to a beech, where the Locust Ridge reaches the Tennessee line, etc.
It is admitted that the chestnut oak at A is the beginning corner of this grant. I am of opinion (1) that the first line of Grant 3290 begins at A and runs to B on the map as a conclusion of law wholly irrespective of whether there ever has been or is now a "Bryson's line," and regardless of where it was located or alleged to have been located. In other words, the existence and location of this line is entirely immaterial for the purpose of establishing the first line of Grant 3290. The admitted facts show that this grant was located by starting at A and running to B, this being the identical line actually run and marked at the time the entries were made.
(2) Assuming that the Bryson line is material, it appears to be undisputed that at the time of the survey in 1871 and the issuance of Grant 3290 thereon in 1872, the line from A to B was reputed to be *Page 146 
the Bryson line, even though that repute was incorrect, and the surveyor located the first line of Grant 3290 under the belief that he was running with the true Bryson line, and he acted upon that belief, although it may have been erroneous.
The referee finds "that Defeat Ridge is located as plaintiff claims, being the ridge going up between the prongs of Little River, in (102) Tennessee, and the head of Defeat Ridge culminates at and with other converging ridges and forms the easternmost knob of the group of knobs known as Thunderhead, on the State line between North Carolina and Tennessee, the said head of Defeat Ridge being at thepoint marked B on the official map."
The Court finds that in making the survey in 1871 of the B. L. Sawyer entries, upon which Grant No. 3290 issued, in 1872 M. L. Kelly, the county surveyor, with his crew, surveyed from the said point "A" up the Deep Gap or Forester Ridge to the top of the Smoky Mountain at "B" at the head of Defeat Ridge, and at the said point "B" made and marked a corner on a tree of the survey he was then making and upon which Grant No. 3290 issued. The said tree was marked as a corner by M. L. Kelly in 1871, having been previously marked as a corner of the Bryson survey in 1867.
The call for 1800 poles north to the Tennessee State line at the head of Defeat Ridge is, in my opinion, controlling. There are two well defined objects that are unmistakable; one is the State line that divides North Carolina and Tennessee, and the other is Defeat Ridge. This ridge, as shown by the evidence, and not controverted, is one of the most prominent natural objects in the whole of that great range of the Smoky Mountains, and because of its prominence has been long and well known to the citizens and inhabitants of both States of Tennessee and North Carolina, as well as to the United States surveys and to geographers. It would be difficult to find a better defined and located natural object, or one better known in all that country. The location of this right where it joins the Smoky Mountains and its relation to the State line was overwhelmingly established by the evidence, and the court found the fact to be that it was located at "B."
It was also admitted that the dividing line between the States of Tennessee and North Carolina passed along the crest of the Smoky Mountains. So that we have here a remarkable conjunction, in fact, of both the descriptions mentioned in the surveyor's certificate of his survey, and the grant issued thereon, viz., "the Tennessee line and Defeat Ridge."
These facts being practically admitted or indisputably ascertained, under the repeated and well settled decisions of this Court, it follows, as the legal result, that the first line of Grant 3290 begins at "A" and *Page 147 
runs to "B." As I read the cases, this rule of law may be regarded as an ancient one in this State, and so well settled that it can hardly be seriously questioned.
Among the many cases cited in the elaborate and learned brief of the plaintiff's counsel, we find the following to be especially in point, where the rule is most instructively applied to facts very similar to those in the case under consideration: Miller v. Cherry, 56 (103) N.C. 29; Jones v. Robinson, 78 N.C. 398; Flannigan v. Lee,19 N.C. 430; Carson v. Burnett, 18 N.C. 558; Jones v. Bunker,83 N.C. 327; Reid v. Schenck, 14 N.C. 65; Graybeal v. Powers,76 N.C. 71; Waters v. Simmons, 52 N.C. 543.
When a deed sufficiently identifies a thing by its known name, or other means, and then superadds, unnecessarily, to the description, such further description, though inaccurate, will not vitiate the previous and perfect description. Simpson v. King, 36 N.C. 11; Mortgage Co. v. Long,113 N.C. 126; Proctor v. Pool, 15 N.C. 373.
The head of Defeat Ridge is a natural object so commanding in its character that it answers the description fully, and is sufficient of itself to locate the second corner, regardless of whether the line runs with Bryson's line or not. The unnecessary and false description will be disregarded and the line run to this controlling natural monument.
In Ehringhaus v. Cartright, 30 N.C. 42, it is said: "Many of the rules respecting boundaries are examples of preferring one part of a description, turning out to be true, to another part, turning out to be untrue. The case of Proctor v. Pool, 4 Dev., 370, is an instance of the application of the rule to a general description of the thing devised, the Court holding that the effect of the true description was not to be weakened by a further and unnecessary false description." Smith v. Low, 24 N.C. 460.
In Miller v. Cherry, 56 N.C. 29, it is said: "Our decision is made under the rule that where more than one description is given, and there isa discrepancy, that description will be adhered to as to which there is theleast likelihood that a mistake would be committed, and that be rejected in regard to which mistakes are more apt to be made. This is a rule of frequent application. If a tract of land be described by natural objects, or corner trees, and also by course and distance, and there turns out to be a discrepancy, the latter description is rejected."
In Addington v. Jones, 52 N.C. 584, the Court said: "This rule, in respect to questions of boundary, presupposes that the description which isto control, and be put in the place of course and distance, has of itself
sufficient certainty to locate the land, supposing the course and distance which it controls and contradicts to be stricken out of the grant." *Page 148 
In Stafford v. King, 94 Am. Dec., 308, it is laid down that the general rules in respect to locating land are: (1) By natural objects, such as rivers, mountains, lakes, creeks; (2) artificial marks, such as marked trees and lines; (3) course and distance.
In this case Chief Justice Marshall is quoted as having said that "The most material and most certain call shall control those which are less material and less certain." In this case it is laid down as a (104) prime rule that the "Footsteps of the surveyor must be followed, and the above rules are found to afford the best and most unerring guides to enable one to do so."
In Doe v. Payne, 11 N.C. 71, it is said that "When the natural boundary is unique it has properties peculiar to itself." A more distinctive, commanding, and controlling object could scarcely be thought of than the well known head of a great mountain ridge.
In Carson v. Burnett, 18 N.C. 558, it is said: "The object in all boundary questions is to find some certain evidence of what particular land was surveyed, or was intended to be conveyed. . . . When the call is for the line of another tract, it has also been held that course and distance may yield to it. But it is, obviously, not so decisive as the call for anatural boundary."
In Waters v. Simmons, 52 N.C. 543, the Court stated: "One of the calls of the grant . . . is, `The head of Spellar's Creek,' which is certainly a natural object," etc. "It was the duty of the court, then, to instruct the jury that, as a construction of law, the head of `Spellar's Creek' was one of the corners of the defendant's tract of land," etc. This is precisely in point in the case at bar. The call is to the State line at the head of Defeat Ridge. Defeat Ridge is a "natural object." Its head is at the Tennessee line and it was the duty of the judge to declare that it was one of the corners of the grant (No. 3290) to W. L. Love.
The defendants insist that the way to go to "B" from the admitted beginning at "A" is to run from "A" to "D", the head of Big Chestnut Ridge, and the defendants' alleged northeast corner; thence westerly along the top of the mountain to "B," a distance of 3 or 4 miles, and then run back in an easterly direction over precisely the same line and same distance to "D" and then resume the survey of the lines of Grant 3290 along the mountain until they turn southwardly to the beginning.
The referee so concluded, and his judgment was affirmed by the court below. In view of the well settled principles of law set forth in the cases that we have cited, I see neither reason in nor authority for such ruling.
The defendant, admitting that the Bryson line was actually run as claimed by the plaintiff, undertakes to explain it by saying that the *Page 149 
straight line from "A" to "D," intended as a Bryson line, was not actually run and marked from "A" to "D" because the line would run through a country badly infested with rattlesnakes, and, therefore, they ran from "A" to "B" and by triangulation platted the true Bryson line from "A" to "D."
This explanation may or may not be true, but it cannot have the effect of changing the controlling call for Defeat Ridge. It is but added proof that the Bryson line was actually run where the plaintiff claims it was, and that is consistent with the call from the chestnut oak to Defeat Ridge.
There are several exceptions to the evidence, which are set (105) out in the assignments of error and commented on in the plaintiff's brief, some of which, in my opinion, are well taken and entitle the plaintiff to a new trial, but in the view I take of the case it is not necessary to prolong this opinion by commenting upon them.
I am of opinion that upon the admitted facts the plaintiff is entitled to judgment for the tract of land bounded and described in Grant 3290, beginning at chestnut oak "A" and running to "B" at Defeat Ridge.
The CHIEF JUSTICE concurs in this opinion.
Cited: Power Co. v. Savage, 170 N.C. 631; Gray v. Coleman, 171 N.C. 347;Coble v. Barringer, 171 N.C. 449; Springs v. Hopkins, 171 N.C. 490;Miller v. Johnston, 173 N.C. 66; McGeorge v. Nicola, 173 N.C. 710;Headman v. Comrs., 177 N.C. 265; Dudley v. Jeffress, 178 N.C. 113; Hogev. Lee, 184 N.C. 50; Watford v. Pierce, 188 N.C. 433; Benton v. LumberCo., 195 N.C. 364; Thompson v. Buchanan, 198 N.C. 281; Brown v. Hodges,233 N.C. 622.