MIZELL & WALKER v. DENNIS SIMMONS and W. J. HARDISON.

*Description of Land—Boundary—Course and Distance—Mistake.*

1. A call in a grant for a line " beginning at the mouth of a gut, *supposed* to be J's bounds, running along his *supposed* line south 300 poles in the pocosin to or near the head of Speller's creek &c." indicates that there was no established and known line, and the course and distance being certain in themselves must govern.

2. In such case the call being from an established corner " south 300 poles in the pocosin *to or near* the head of Speller's creek," the course and distance must prevail, without being controlled by the words "*to or near* the head of Speller's creek."

3. In such case, to repel the allegation that there was a mistake in the mathematical call by course and distance or that there was any intention to make the head of the creek the terminus of the line irrespective of course and distance, it is competent to consider all the calls of the grant and also the diagram made at the time of the entry and survey and referred to in the grant.

4. In such case, it was unnecessary as a matter of fact to ascertain where was the head of Speller's creek, because as a matter of law the terminus of the line was at the end of the course and distance called for.

5. The Courts will construe "east" to mean "west," in the call for a line in a grant, when the mistake is obvious and fully corrected by the other calls and an annexed plat.

(*Carson* v. *Burnett*, 1 Dev. & Bat. 546 ; *Cansler* v. *Fite*, 5 Jones 424 ; *Kissam* v. *Gaylord*, Busb. 116 ; *Spruill* v. *Davenport*, Ib. 134 ; *Literary Board* v. *Clark*, 9 Ire. 58 ; *Harry* v. *Graham*, 1 Dev. & Bat. 76 ; *Cooper* v. *White*, 1 Jones 389 ; *Houser* v. *Belton*, 10 Ire. 358 ; *Campbell* v. *McArthur*, 2 Hawks 33, cited, commented on and approved.)

(SMITH, C. J. *Dissenting*, cited *Waters* v. *Simmons*, 7 Jones 451 ; *Cherry* v. *Slade*, 3 Murp. 82 ; *Tatem* v. *Paine*, 4 Hawks 64 ; *Brooks* v. *Britt*, 4 Dev. 481 ; *Patton* v. *Alexander*, 7 Jones 603 ; *Nash* v. *R. R. Co.*, 67 N. C. 413 ; *Dobson* v. *Finley*, 8 Jones 495 ; *Green* v. *Castlebury*, 70 N. C. 20 ; *Literary Board* v. *Clark*, 9 Ire. 58.)

CIVIL ACTION to recover Damages for trespass on land tried at Spring Term, 1878, of MARTIN Superior Court, before *Henry, J.*

The case involved the title to land, and the material facts applicable thereto are as follows : The plaintiffs claimed under two patents,—" A " for 300 acres, dated October 13th, 1778, lying on the south side of Roanoke river, beginning at the mouth of a gut supposed to be Isaac Jordan's bounds, running along his supposed line south 300 poles in the pocosin to or near the head of Middle or Speller's creek, thence north 45 east 160 poles in the pocosin, thence north 330 poles to Roanoke river, then up the river to the beginning ; and " B " for 300 acres, dated June 15th, 1787, beginning at an oak opposite to the cedar landing lying on the south side of said river, running south 15 east 400 poles, thence east to the line of his other land, thence with said line 283 poles to said river, then down the river to the first station.

It was conceded that " A " was the beginning of Isaac

Note.—Patent "A" as claimed by plaintiff— A, B F, C G, L H,
  "         "        defendant— A, E W, C H, D.
  "      B        "        plaintiff— F I, E J, D, L H,
  "         "        defendant— E I, E J, C H, D.

Photo Eng. Co., N. Y.

Jordan's land, and of the plaintiff's patent " A," the distance from the same to the creek, south, being 204 poles. The referee to whom the case had been referred, reported that the reputed head of Speller's creek was established to be at GB, but that the precise source of the head waters of the creek could not be found. He also reported that " the reputed line of Isaac Jordan, which is called for in patent ' A ' as Isaac Jordan's supposed line, is a straight line from GB to the sycamore on the river bank ; there is however no evidence of any marked line, and at the date of patent 'A,' Isaac Jordan's line was not known or established ; I decide that it does not control the plaintiff's call for course and distance."

The grantee had no land or lines east of the first line of patent B, which together with the fourth call down the river to the beginning, is the material evidence in the cause. The line from CH to D by actual measurement is 282½ poles, and from CG to LH is 330 poles. The land trespassed upon lies south of the creek. The defendants own the land adjoining the plaintiffs' on the south and west.

The defendants filed exceptions to the referee's report, and those considered material are :—1. That the first line of plaintiffs' patent terminates at the head of the creek if it can be found, and that point is the " head " for the purpose of boundary, which is reputed to be the head of the creek and not " the source or head waters." 2. The referee erred in reporting that plaintiffs' patent covers the course and distance called for ; for to do so, the creek must be crossed and the line extended 96 poles south of the creek at a point 312 yards below the reputed head, and more than that below the head waters of the creek. 3. He sets out that a line due south from the beginning as called for in patent "A" reaches the creek at 204 poles from the river, and 57 poles from the point GB, and his conclusion that if

patent "A" stops at the creek or at said point, the defendants have not trespassed on plaintiffs' land; whereas he erred in not reporting as conclusion of law, that the plaintiffs' line did not cross the creek and that the defendants had not trespassed on plaintiffs' land, and were entitled to judgment; that the concurrent testimony of nineteen witnesses establish the reputed head of Speller's creek to be at the point GB, and the referee should have adopted that as the terminus of the first line of plaintiffs' patent "A." 4. He erred in reporting that Isaac Jordan's line was not known or established in 1787—ninety years ago—inasmuch as such proof by witnesses was impracticable, and the line is shown by reputation and tradition, which is sufficient in law; that marked lines or line trees are not necessary to establish the boundary between natural objects called for, as here—the sycamore and head of the creek—and he erred in attaching any importance to their absence or the want of proof of them. 5. As to the line of patent "B" the referee reported "that the second call was clearly an error, as an east course would not strike his other line, when a west course would, and the last call says down the river to the first station,—I decide that the line mentioned runs west to his other line," &c. ; to which the defendants excepted, for that, he erred in construing "east" to mean "west;" he should have decided only that the call should be "to my other line." and adopted the line on the diagram which strikes his other line at a point 283 poles from the river.

The referee gave judgment for plaintiffs, and the Court sustained the exceptions and gave judgment for defendants, from which the plaintiffs appealed.

*Messrs. P. H. Winston* and *Mullen & Moore,* for plaintiffs.
*Messrs. Gilliam & Gatling,* for defendants.

Bynum, J. The decision depends on the length and

course of the first line. The beginning corner is upon the south side of the Roanoke river, and is not disputed. The call of the grant is: "Beginning at the mouth of a gut, supposed to be Isaac Jordan's bounds, running along his supposed line, south 300 poles in the pocosin, to or near the head of Middle or Speller s creek."

Where the call is for the line of another tract of land, the course and distance must yield to it, provided that at the time of the grant, the line called for was an established line, or capable of being then established. But where there is no such established line at the date of the call, a call for such line must be disregarded, and the course and distance pursued. *Carson* v. *Burnett*, 1 Dev. & Bat., 546.

There was no evidence here, other than what appeared in the grant itself, of the previous or contemporaneous existence of an Isaac Jordan boundary, or of any grant, deed, possession, line or corner answering such a description. But the call itself, the "supposed bounds" and the "supposed line" of Isaac Jordan, clearly indicates that there was then no established and known line. It was therefore totally irrelevant to show, that long subsequent to the grant, a line between the beginning corner of the grant and the head of Speller's creek, at GB, proved to be the Walling line, was reputed to be the same as the Isaac Jordan line. Course and distance, is a certain description in itself, and to make it yield to a "supposed line" supported by neither deed, possession, nor marked boundaries, would be to make the more certain yield to the less certain and fallacious, when the rule is that course and distance give way only to something which is more certain.

Laying aside so much of the call as relates to Isaac Jordan's bounds and line, the real question in the case is,— when the call of a grant is from an established corner on the river, "south 300 poles in the pocosin, *to or near*, the head of "Speller's creek," the course and distance must

prevail, or be controlled by the call "to or near the head of Speller's creek." It will be observed that the term "near" answers the call of the grant as fully as the word "to," and as it is only comparative as a description of the terminus of a line, it is vague, uncertain, and establishes nothing. We say Neuse river runs near Raleigh, yet it is several miles distant. So in *Cansler* v. *Fite*, 5 Jones, 424, the call was to a Spanish oak "*in or near* Richman's line." The tree could not be found, and the distance gave out 30 poles short of Richman's line. The Court held that the call, "in or near," could not control course and distance, and that the line terminated at the end of the distance, and could not be extended to Richman's line. Speaking of the term, "in or near," as a definite call,—"How near," said the Court, "one pole or fifty? Either would fill the description."

.The same principle is decided in *Kissam* v. *Gaylord*, Busb., 116, and *Spruill* v. *Davenport*, Ib., 134. Our reports contain many decisions in land cases, and perhaps the legal principles which should govern in the ascertainment of boundaries have been as thoroughly discussed and settled in North Carolina as in any other State, but we have been unable to find a single case where it has been held that when a deed without other description calls for a certain course and distance to an object designated by the alternative words "to or near," the mathematical call shall be controlled by such an ambiguous and elastic description. Neither course nor distance can be departed from, further than the one or the other is necessarily controlled by other calls which demonstrate that the course and distance stated in the deed, were stated by mistake. To give such an effect to the undeterminate call, "to or near the head of a creek," would be to cut loose from all the rules established for the ascertainment of boundaries with the greatest degree of precision and certainty. *Literary Board* v. *Clark*, 9 Ire. 58; *Harry* v. *Graham*, 1 Dev. & Bat. 76.

To repel the allegation that there was any mistake in the mathematical call by course and distance, or that there was any intention to make the head of the creek, the terminus of the line, irrespective of distance and course, it was competent to consider all the calls of the grant, and also the diagram made at the time of the entry and survey, and referred to in the grant, and thus. made a part of it. By the grant and plat annexed, the first call from the river is south 300 poles to or near the head of Speller's creek. as before stated "then north 95 east 160 poles in the pocosin, then north 330 poles to the Roanoke river, then up the river to the beginning." Both the plat and grant call for 300 acres of land, and by computation, that is the quantity enclosed by the calls of the grant, as run by course and distance ; whereas if the first line should be run to the head of the creek, instead of being 300 poles, as called for by the grant, it is only 172 poles, and the course, instead of being south, as in the grant, is south 14 east ; and the third line, which is 330 poles by the grant, is only 282 poles ; and the quantity of land enclosed is less than 200 acres,. when both the plat and the grant call for 300 acres, and that is the precise amount enclosed by running the course and distance stated in the grant. So that the intent to convey 300 acres is expressed in the grant and demonstrated by the annexed map and calls ; and no case can be found where the Courts have permitted the intent of the parties to be disappointed by deflecting the line and shortening the distance, to reach a vague, incidental call, no better defined than by the terms "at or near the head of the creek," which this Court has declared to be too uncertain to control course and distance.

Where it is clear that if there was a mistake, it was not in the course and distance, but in supposing that there was such a place as the head of the creek, in the neighborhood of the end of the line, there can be no deviation from course and distance. *Carson* v. *Burnett, supra.*

It was insisted upon the argument that if the course and distance of the first line were not controlled by the call for the head of the creek, yet that it could not extend across and beyond the creek, but must stop at it. We know of no such rule of construction. The creek is not a call of the grant. If the distance had given out short of the creek, the line could not have been extended to it; and by the same rule, if the distance extended beyond the creek, the end of the distance is still the true call and the terminus of the line. Upon inspecting the map of the creek furnished to us, it appears that it has several prongs or branches leading into and composing it; some extending above the point designated as the head, and some extending out from below and reaching towards the end of the call in the grant. The more reasonable hypothesis, and the one that avoids much of the confusion, is, that in using the words " to or near the head," the surveyor meant to say " to or near the head waters of Speller's creek," as indicating a general description of the terminus of the line and location of the grant, not as controlling course and distance, but pointing out by natural objects, the general direction of the call.

So far we have forborne to mention that the plaintiffs claim under two grants, the second of which lies below, adjoining and along side of the first grant. The only contention in reference to this, respects the second call, which is east to the line of the first, whereas that course would lead directly from the first tract, and the lines would not close so as to include any land. The mistake is so obvious, and so fully corrected by the other calls and the plat annexed, that it presents no difficulty. The Courts will construe east to mean west, to correct a mistake, when the intent of the parties appears, and the means of correcting it are presented. *Cooper* v. *White,* 1 Jones, 389 ; *Houser* v. *Belton,* 10 Ire., 358 ; *Campbell* v. *McArthur,* 2 Hawks, 33. So also in extending the line west instead of east, the course called

for in the grant as corrected, is due west, until the line of the first grant is reached. By none of the rules of construction can it be made to run north 60 west, to conform to the theory of the defendants.

It has been often held by this Court, that what are the termini or boundaries of a deed, is a matter of law for the Court; but where they are, is a matter of fact for the jury. In our view it was necessary as a matter of fact to ascertain where was the head of Speller's creek, because as matter of law, the terminus of the first line of Patent A was at the end of the course and distance called for, from the beginning corner. In that we concur in the conclusion of the referee. We also concur with him that the second call of Patent B must be construed to call west, when the call is east. No exception was taken to the finding of damages by the referee. The rulings of His Honor sustaining the exceptions of the defendants will be reversed, and the judgment of the referee upon the report will be affirmed. The Court below allowed the referee $125 for his services, and as the allowance was not excepted to, that sum will be added to the judgment against the defendants.

There is error. Judgment reversed and judgment will be rendered here according to the finding of the referee, with the addition of his allowance as indicated.

SMITH, C. J., *Dissenting.* During the progress of the inquiry before the referee, the defendant introduced witnesses to prove declarations of living persons as to the place known as the head of Speller's creek, which testimony was taken down, and the plaintiffs' exception thereto noted. In his report the referee states that the evidence fails to establish the locality of the head of the creek, and he accordingly finds the true line of the Jordan grant, under which the plaintiffs claim, to run from the admitted starting point on the river, according to course and distance, over and beyond

the creek. This running includes the land in dispute in the grant.

On the hearing of the case before the Judge upon the defendants' exceptions, none being filed by the plaintiffs, it does not appear that any question was made as to the competency of the evidence, or that it was brought to the notice of the Court, or any ruling asked or made upon it. Nor can we see that it was acted on either by the referee or the Court. It can not, therefore, be made here, as our jurisdiction is limited to the correction of errors in the Court below, and these should be pointed out by exceptions. If, however, the objection had been pressed, I am not prepared to say it should be sustained. It was certainly proper to receive evidence of the locality of the head of the creek, as of the creek itself. In *Waters* v. *Simmons*, 7 Jones 541, one of the calls of the deed was, " thence north, 10 east, 485 poles to the head of Speller's creek," and a witness was allowed to testify, as a matter of personal knowledge, where the head of the creek was. The Court in the opinion say: "If a river, creek, marsh, swash, swamp, savanna, mountain cove or ridge be called for in a deed or grant, it can not be identified by the instrument itself, but its location must in the very nature of things be pointed out by parol proof, that is, by witnesses who profess to know and to be able to state where it is," and that " the difficulty of the proof can be no reason why the testimony should be rejected as incompetent."

It is true that declarations from persons who are living are not admissible to prove private boundary lines, and it is only when they are dead that in this State, from necessity, the rule excluding hearsay has been so far relaxed as to admit them; but the doctrine is confined to declarations which relate to the boundaries of land, and does not extend to the names by which natural objects are designated and known. The names of mountains, creeks, swamps, and oth-

er physical objects upon the earth's surface are acquired by reputation, and consequently may be proved by reputation. This is the most usual method of proof. The evidence simply fits the name of the thing named, and can not be excluded, because by reason of its being called for in a deed it may ascertain and fix a boundary of land. *Dobson* v. *Finley*, 8 Jones 495.

Among other exceptions of the defendants is one to the effect that the referee did not find, and upon the evidence ought to have found, the true locality of the head of the creek to be at the fork marked *D. G.*, in the plat, and this exception is sustained by the Court. The Court therefore finds as a fact that there was a place known as the head of Speller's creek, and that it was at the point claimed by the defendants. This is established upon the weight of the evidence, and in this Court must be considered as conclusively settled. The Judge may review the report of the referee, and set aside, modify, or confirm the same, in whole, or in part. C. C. P., § 247; and his action determines the facts when this Court is called on to review his deductions of law. *Green* v. *Castlebury*, 70 N. C., 20.

If the line is then run from the river to the head of the creek, the land upon which the alleged trespasses were committed is excluded from the Jordan grant. We have then a conceded starting point on the river, and a definitely ascertained natural object, at or near which, by the calls of the grant, the lines must run and terminate ; and we have the divergent and longer line by course and distance, and the question is,—which must control. I think this question has been settled by repeated adjudications, and in case of such conflict the call of natural objects must prevail. *Cherry* v. *Slade*, 3 Murp. 82; *Tatem* v. *Paine*, 4 Hawks 64; *Brooks* v. *Britt*, 4 Dev. 481 ; *Patton* v. *Alexander*, 7 Jones 603; *Nash* v. *R. R. Co.*, 67 N. C. 413. Nor can a plat or mathematical diagram attached to the grant whereon no

13

natural objects are laid down, control the calls of the deed. *Literary Board* v. *Clark*, 9 Ire. 58. I am therefore of opinion that the judgment should be affirmed.

Error.

PER CURIAM.                     Judgment reversed.