VAN BROWN v. JOHN HOUSE et al.

*Action to Recover Land—Boundaries — Survey — Course and Distance—Monuments or Natural Objects— Vague Description.*

1. The general rule is that the calls in a grant or deed control in locating the land conveyed thereby, subject to the exception that where a natural object or monument is called for, and it is susceptible of location, such natural object or monument, when located, will control the course and distance; but such calls must be both reasonable and certain.

2. A deed to B., dated March 28, 1799, granted 10,240 acres, the boundaries beginning at a birch, and "running south 360 chains to a stake supposed to be in D's line; thence with his line east 390 chains to his N. E. corner." The D. line was a mile and a quarter from where the calls in the B. grant gave out. The D. grant, issued in 1795, was for 60,000 acres, some of its boundaries being over 20 miles long. If the lines running south were extended to the D. line, the B. grant would contain about 25,000 acres. If it stopped after running 360 chains, the grant would still contain more than 10,240 acres, the amount the deed called for. *Held*, that the calls "running south 360 chains to a stake supposed to be in D's line, thence with his line east 390 chains to his northeast corner," were too vague and uncertain to vary the course and distance called for in the grant. (AVERY, J., *dissenting*.)

ACTION to recover land, tried before *Armfield, J.*, and a jury, at August Term, 1893, of MADISON Superior Court.

There was judgment for defendants and plaintiff appealed. The material facts, upon which the decision turns, appear in the opinion of Associate Justice FURCHES.

*Mr. V. S. Lusk,* for plaintiff (appellant).
*Messrs. W. W. Jones* and *H. T. Rumbough,* for defendants.

FURCHES, J. :   This is an action of ejectment brought to this Court on appeal of plaintiff.   Plaintiff for the purpose of making out his title offered in evidence a grant from the State of North Carolina to himself issued on the 18th of June, 1890.   And it being admitted by defendant that it covered the land in question, and it also being admitted that defendant was in possession, plaintiff rested his case.

The defendant for the purpose of showing that the land claimed by plaintiff had been granted prior to the date of plaintiff's grant, and was not the subject of grant in 1890, offered in evidence a grant from the State to John Gray Blount and William Steadman, dated March 28th, 1799, which he claimed covered the land in controversy. The calls of this grant are for " ten thousand two hundred and forty acres of land in Buncombe County on the West side of the French Broad river, beginning at a birch, ash and pine on the West bank of said river opposite the Painted Rock below the Warm Springs, running South 360 chains to a stake, supposed to be in Stokley Donelson's line, thence with his line east 390 chains to his north-east corner, thence south 275 chains to a *bunch of dogwood* on a branch of Spring Creek near the Puncheon Camp, Donelson's beginning corner, thence east 80 chains, thence 150 chains to a line of David Allison's 250, 240 acre survey, thence with that line north 45 degrees east to the French Broad river, thence down the river with the meanders of

the bed of the river and around the line of the old patented land on the west side of said river to the beginning."

The beginning call of this grant on the west bank of the French Broad river at the Painted Rock was agreed upon by plaintiff and defendant. And it is admitted by defendant that to run south from this agreed beginning, three hundred and sixty chains, and then east will not include the land covered by plaintiff's grant. But defendant claims that the Blount grant, under which he is defending, calls for the line of the " Stokley Donelson grant," which he alleges is further south, and that the Stokley Donelson line is the southern line of the Blount grant. Under this claim of defendant, the surveyor, as it was proper for him to do, extended this south line for one and one-fourth mile further than the three hundred and sixty chains called for in the Blount grant, to a point that defendant claimed to be the " Stokley Donelson " line. And it is admitted by plaintiff that if this point, claimed by defendant to be the Stokley Donelson line, is the southern boundary of the Blount grant and thence east, that it does cover the land contained in his entry of 1890.

There was much evidence offered by both sides as to the location of the Donelson grant which was for 60,400 acres " issued August 28, 1795. Defendant's evidence tended to establish it at the point contended for by him. And plaintiff's evidence tending to show that this line, the one contended for by defendant, was not the Stokley Donelson line.

There are some exceptions taken to the evidence which we are not prepared to approve, as we understand the rul-- ing of the Court. But as the point does not distinctly appear, and we may not understand the point intended to be made, and as a ruling on this point in favor of the

plaintiff would probably not materially affect a new trial, we prefer to put our opinion on a more substantial point.

At the close of the evidence the plaintiff asked several special instructions of the Court which we will not repeat in full. But in these instructions he asked the Court to charge that the first call "South 360 chains to a stake, supposed to be Stokley Donelson's line, thence with his line ·east 390 chains to his north-east corner," was too vague and uncertain to vary the course and distance called for in the grant. And that the Court should so charge the jury and instruct them that said grant stopped at the end of the call for 360 chains, and thence run east. The Court refused this prayer of plaintiff, and instructed the jury "that if they should find that the beginning corner of the Donelson grant was at the point designated by the hand at the figure 28, as contended for by defendant, and that its lines had been run out and marked and located at the date of Blount's .grant, or that they were susceptible of location to a mathematical certainty from the Donelson grant, the beginning ·corner of the Blount grant being admitted, the call of the Blount grant 'beginning at an ash opposite the Painted Rock, running south 360 chains to a stake supposed to be in Stokley Donelson's line, and then east with his east line 390 chains to his northeast corner, &c.' (though the distance gave out before the Donelson line was reached by the first call) the second call would carry the line to the nearest limit in the Stokley Donelson line, and then with that line to the north-east corner of Donelson's grant, if such a line can be found, and if they believe from all the evidence that the Stokley Donelson line was the line called for in the Blount grant, that the land in controversy was covered by the Blount grant, and the plaintiff could not recover. That if they should find that the Stokley Donelson grant had been correctly located ; that its beginning

corner was established at the date of its issue, and its lines were located or were susceptible of location to a mathematical certainty from the grant, and the lines of the Stokley Donelson grant were the lines called for in the Blount grant, that the law would extend the second call in the Blount grant to the line of the Stokley Donelson grant, and then with it to its north-east corner, &c. So that at the date of the plaintiff's entry and grant there was no land vacant and open to grant within the said boundary, the same having been previously granted to Blount by the State."

So then the question is, Was the refusal to give the instructions asked and the charge as given erroneous? If they were, the plaintiff is entitled to a new trial. If they were not, then the judgment should be affirmed.

In the early history of this State there were a great many very large grants of land obtained by speculators, commonly called Speculation-grants. As the country did not fill up rapidly, these lands did not increase in value rapidly, and but few of these "speculators" derived much benefit from such lands. But many of them have floated down with the current of time, and are now in the hands of other speculators who now hold them under tax-titles or otherwise, purchased for small sums. And as these lands now begin to grow in value and importance, we have more and more litigation growing out of these old grants, the most of them being located in an almost unsettled rough mountain country, the lines of which often extend for miles. Many of them, it is said, were never actually surveyed, but a party wanting to make an entry would locate a beginning corner and then plot the boundaries, and in the language of the Court below locate them "with mathematical certainty" by simply making a plot of a survey. And it is evident to our minds that both the Blount grant and the Donelson grant

(some of the lines of which were 20 miles long) were located in this way. And this may afford some explanation for the Blount grant calling for "a stake supposed to be in the Stokley Donelson line"—when the Stokley Donelson line is a mile and a quarter from where the calls in the Blount grant give out, if the Stokley Donelson line is where defendant contends it is.

The general rule is that the calls in a grant or deed control in locating the land granted or conveyed. But this general rule is subject to the exception that when a natural object or monument is also called for in the deed or grant, susceptible of location and is identified and located, that this will control course and distance, as called for in the instrument. And the courts have held that the line of an adjacent tract, if known and established at the time of issuing the grant or executing the deed, may constitute such natural object or monument.

But this exception is put on the ground that the natural object is more certain than course and distance, as these depend upon the correctness of the compass, the accuracy of the surveyor and the faithfulness of the chain-carrier.

To take the case out of the general rule that course and distance, as called for in the conveyance, control, there must be another call more certain than course and distance. Then, is the call to a stake "supposed to be in Stokley Donelson's line" one mile and a quarter from where the course and distance called for in the grant give out—more certain than course and distance called for? It is manifest from the call itself that the party locating this grant did not know where Stokley Donelson's line was. And if he did not know where it was then, but it should, a hundred years after the grant was issued, be found that the Stokley Donelson line was one mile and a quarter from where the calls of the grant located the grant, can it be

reasonably contended that this uncertain call "supposed to be in the Stokley Donelson line" is more certain than the call "thence south 360 chains to a stake." This it must be, or the calls of course and distance contained in the grant will control. This is the general rule, and the exception must be established or the general rule will prevail.

Then if there was nothing more in the call than this (a stake supposed to be in Stokley Donelson's line) it seems clear to us upon the " reason of the thing " that this call would not be sufficient to take the case out of the general rule, and the course and distance called for in the grant must prevail. But this is not only so upon the reason of the thing, but it has been so held by our Court. *Mizell* v. *Simmons*, 79 N. C., 182. But the call does not stop with the call for a stake " supposed to be in Stokley Donelson's line," but it then calls as follows " thence with his line east 390 chains to his north-east corner." And it is claimed for the defendant that this call is more certain than the other, and carries the south line of the Blount grant to the Donelson line wherever it may be. But we do not assent to this proposition. In our opinion, any call to take the case out of the general rule must be both reasonable and certain, and we do not think this is either. We do not think it reasonable that when the State granted to Blount a tract of land commencing on the west side of the river at the Painted Rock, thence south 360 chains, it intended that line to extend one and a fourth miles further than was called for. And to have this effect the call must be to some well known and well established object, at the time of the grant. But as it appears to us this call depends upon the other call " supposed to be in Stokley Donelson's line " and it is no stronger than that call, which, we have seen, is not sufficient. If the Blount grant had extended to Stokley Donelson's line, thence east would have necessarily run with

116—55

Stokley Donelson's line, as his line was an east and west line. But if the grant did not go to the "supposed line" then it did not run east with the "supposed line." Whether we get to the Stokley Donelson line or not, does not change the calls in the Blount grant. It is thence east from wherever the Blount grant stops.

It is not pretended that the defendant established or found any corner or line of the Stokley Donelson grant, except the beginning corner. And the other lines and corners of a 60,400 acre grant are attempted to be established by a survey "with mathematical certainty" to control the course and distance called for in the Blount grant. It is not contended that any marked line or monument is found locating the Stokley Donelson line at the point where defendant contends that the Blount grant should terminate. We do not think such a mathematical line as this can be used to control the positive calls of course and distance contained in the Blount grant. Who can tell that there are not errors in the calls of course and distance in the Stokley Donelson grant, or in the survey made in a rough and almost unbroken forest of a 60,000 acre tract of land granted a hundred years ago?

The surveyor testified (and his testimony is made part of the Judge's case on appeal) that to survey the Blount grant, as contended for by defendant, it would contain between 25,000 and 30,000 acres of land; and to survey it by the calls and distances in the grant, as contended should be done by plaintiff, it will contain more than 10,240 acres (this being the amount called for in the grant).

We are not inadvertent to the fact that, as a general rule quantity of acres called for in the conveyance cannot be invoked to establish lines and locate the deed. But it has been held by this Court that "where the boundaries are doubtful it becomes an important element." *Cox* v. *Cox*,

91 N. C., 256.   We do not think this south boundary of the Blount grant doubtful.   But if it should be considered so then this question of quantity comes in to sustain the view we have taken of this case.

We are of the opinion that plaintiff was entitled to the prayer as above stated and there was error in the Court's refusing to give the same, and there is also error in the charge as given.   The plaintiff is entitled to a new trial and it is so ordered.

New Trial.

AVERY, J. (dissenting):   It was conceded that the call from a known beginning "running south 360 chains to a stake *supposed* to be in Stokley Donaldson's line" would not control course and distance under the ruling in *Mizzell* v. *Simmons*, 79 N. C., 182, even where the location of the line called for was unquestioned and no difficulty would arise about the point where an extended line would intersect with the "Stokley Donaldson line," but the question presented by the appeal is whether the Judge erred when he refused to charge the jury that the two calls "South 360 chains to a stake, supposed to be in Stokley Donaldson's line, thence with his line 390 chains to his north-east corner," were too vague and uncertain to vary the course and distance called for in the grant," though the defendant offered evidence "tending to show the location of the Donaldson line as contended for by him," viz., where he contended the extended line intersected.

The Court instructed the jury in substance that if the Stokley Donaldson line could be ascertained with "mathematical certainty," the first call taken in connection with the second would be construed so as to give effect to all of the descriptive words and would extend the first line to the Donaldson line and run with it the distance called for.   If

the first call had been for stake *"in"* Stokley Donaldson's line and that line had been at the time of taking out the grant "an established line *or capable of being then established,"* then, upon the authority of *Mizzell* v. *Simmons* (on page 187) and *Carson* v. *Blount,* there cited, it would have been competent, by a survey of the Donaldson grant, to establish the line called for and then extend the first line till it should intersect with it. This would be done upon the fundamental maxim, that the law regards as certain whatever can be made certain with the data available for the purpose. The opinion delivered by Justice BYNUM, in Mizzell's case, that a line which was capable of being established would control distance as effectually as one actually marked, finds support in a long line of decisions. Judge PEARSON in *Corn* v. *McCrary,* 3 Jones, 496, said of a similar line: "It makes no difference whether it is a marked or an unmarked or *mathematical line,* as it is termed in the case, provided it be the line which is called for." In the same opinion he defines a mathematical line as one not marked but ascertained by running the call from one known corner to another. It is admitted that there was evidence tending to show the location of the Donaldson line, that would have been intersected by extending the first call. The same learned Justice, in *Graybeal* v. *Powers,* 76 N. C., 66, announces the doctrine distinctly that whenever a line of another tract (whether a marked or mathematical line) is called for, course must be disregarded, if the jury find that the evidence is sufficient to locate the line mentioned.

It being conceded then that there was testimony tending to locate the line mathematically, it follows upon the authorities cited above that distance must be disregarded, if the jury think it established mathematically by running between two known corners, just as if there had been additional evidence that it was marked. If there is any estab-

lished rule of construction which would require that the second line should be run direct to the Donaldson line, if the jury considered the evidence sufficient to locate it, the judge did not err in his instruction to the jury that if they found from the evidence that the Donaldson line had been run out and marked and located, or that it " was susceptible of being located to a mathematical certainty," then the second call would be run to, and then with that line according to the call.   If the Donaldson line could be ascertained with mathematical certainty ( that being a question for the jury when the testimony was conflicting ) the call " thence with his ( Donaldson's ) line would be according to all of the authorities, more certain than the other description " East 390 chains to his north-east corner."   But it is a familiar and well established rule that in cases like this the line must be run so as to fulfill both descriptions as near as possible.  *Buckner* v. *Anderson*, 111 N. C., 572 ;  *Shaffer* v. *Hahan, Ibid,* 1 ;  *Proctor* v. *Rowe,* 4 Dev., 670 ; *Shultz* v. *Young,* 3 Ired., 385.   " It is a leading rule in the construction of all instruments ( said Judge GASTON in *Shultz* v. *Young, supra*), that effect should be given to every part thereof, and in expounding the description in a deed or grant of the subject matter thereof they ought to be reconciled if possible and as far as possible. If they cannot stand together, each of them is to be considered as declaring the intent of the parties.   The lines of other tracts may be as notorious and certain as any natural object, and by making one of these lines a part of the description of the thing granted, the parties represent it as a *known line* by which the certainty of the thing granted is defined."   Upon the principle stated, the Court held in that case that in order to fulfill the whole of a description from a certain point " South with A B's line 310 poles to C D's corner," where the direction of C D's corner was at

BROWN *v.* HOUSE.

right angle with that of A B's line, it was proper to run the distance called for 310 poles with A B's line, and thence direct to C D's corner. Our case presents the question whether precisely the same leading purpose of the following two descriptions, whether they can be reconciled, would not, as the Judge told the jury, extend the distance so as to reach the Donaldson line, if in the opinion of the jury it was properly located, and meet the description fully by running with it to' the objective point called for. In this way, the three purposes of the grantor, to run with a certain line, to run a certain distance, and to reach a given object would all be carried out. Among the older cases which recognize the doctrine of diverging from a course so as to run with a natural boundary and return by the most direct route to a known objective point, is that of *Cherry* v. *Slade*, 3 Murphy, 82, and among the later cases that of *Long* v. *Long*, 73 N. C., 370.

The principle which governs this case was recognized by both parties in *Buckner* v. *Anderson, supra,* but the controversy grew out of the difference as to its proposed application. Upon looking into the facts, it is manifest that the ruling in that case sustained the instruction excepted to in this.

I do not think that the Court can take judicial cognizance of the history of land grants, certainly outside of what appears in the judicial annals of the State. But even the judicial history indicates that the original grantee, under whom the defendant claims, obtained patents for large bodies of land covering a considerable portion of many Counties, notably Yancey, Madison, Buncombe and Haywood, and that a large number of small land owners trace their titles to that source. I cannot concur in speaking disparagingly of any title acquired in a way that the law pronounces legitimate. Proprietors of large bodies of

SMITH *v.* ARTHUR.

territory and owners of small homesteads should feel that they meet with equal favor before the Courts, and even claimants under tax titles, which will rarely if ever be found valid where they were executed before the passage of the statute regulating the sale of land for taxes, which is now in force, are entitled to the full protection afforded by the laws. It is true that nearly all of the surveys made a hundred years ago, whether for large or small tracts, covered far greater acreage than they purported to include, and many grants for small tracts embraced within their limits proportionally as great an excess over the acreage called for as the large grant offered in this case would cover, if surveyed according to the contention of the defendant. We cannot make a rule for large tracts without disturbing the principles under which the boundaries of smaller ones have by common consent been settled.