RUMBOUGH v. SACKETT.

(Filed May 22, 1906).

*Ejectment—Title—Location of Land—Instructions—Exceptions and Objections to Charge.*

1. A plaintiff in ejectment must recover, if at all, upon the strength of his own title and not upon the weakness of his adversary's. He must, in other words, show a title good against the world or good against the defendant by estoppel.

2. A request to charge the jury that "The beginning corner of said grant was a white oak, directly opposite what was known as the Upper Warm Springs at the date of the grant, and if you shall find that the spring, as now located and described by the witnesses, is at the same place it was in 1803, and that there is no white oak now standing answering the description in said grant, then you will locate said beginning corner at a point on the east side of the. river directly opposite the spring as now located," was properly refused upon the ground that the facts stated were too indefinite for a satisfactory location of the corner, especially under the circumstances of this case, and, further, because the prayer does. not conform to the evidence, but omits a material part of it.

3. Where a judge fails to charge as to any particular· phase of the case, his attention must be directed to the omission by a prayer for special instructions upon the matter thus overlooked, or his failure to charge cannot afterwards be assigned as error, but when he so charges as to eliminate from the case a substantial part of it, which would necessarily prejudice one of the parties. it will be reversible error.

ACTION by J. C. Rumbough against J. H. Sackett and wife, heard by *Judge W. R. Allen* and a jury, at the January Term, 1906, of the Superior Court of MADISON.

The plaintiff brought his action to recover a tract of land described as follows: "Beginning at a white oak below the mouth of a branch opposite William Nelson, Jr., at the Upper Warm Springs on the east side of French Broad river, and running up the river so as to include a small bottom, and with the meanders of said river 145 poles to a beech and

large rock on the northeast side of said river, then north
55 degrees east 60 poles to a stake, then north 32 degrees
west 145 poles to a stake, then to the beginning, containing
50 acres." He claimed under a grant issued to William
Brittain in December, 1803, with which he connected himself
by mesne conveyances. The defendant denied the plaintiff's
title and right of possession, and specially denied that the
Brittain grant covered the *locus in quo.* He also claimed
under a grant issued to Thomas Gable, December 13, 1798.
It was admitted by the plaintiff that if the beginning corner
of the Brittain grant was not at A, but at 1, as shown
by the map filed in the case, it does not embrace the land in
dispute and he is not entitled to recover. The court sub-
mitted issues to the jury which, with the answers thereto,
are as follows: "1. Where is the beginning corner of the
plaintiff's grant on the plat? A. At 1 on small plat. 2. Is
the plaintiff the owner of the land in controversy? A. No.
3. If so, is the defendant in the wrongful possession thereof?
A. No."

Testimony was introduced by both parties to show the loca-
tion of the grants. We deem it necessary, in order to pre-
sent the material point in the case, to refer briefly to the tes-
timony of two of the defendant's witnesses, R. B. Justice
and C. T. Garrett, who testified as to the location at 1 of the
stump and white oak tree pointed out to them by deceased
persons as the corner of the Brittain patent. The witness,
Justice, stated that "the Upper Spring was directly across
the river from the point at 1," as shown on the map. He
further said that "There is a pin oak at A; it is different
from a white oak and has leaves like a chinquapin. It is
different from the white oak that stood at 1. Two sycamores
stood near the stump in 1887, one of them having the mark
of a pointer; I do not know the age of the marks." There
was other evidence tending to show the location of the begin-
ning corner of the Brittain grant at 1, and also evidence
tending to show the contrary. It is not necessary to set forth

any more of the evidence, which was somewhat voluminous, as that already stated will suffice for our purpose, in the view taken here of the case.

The plaintiff requested the court to charge the jury as follows: "4. The court charges you that the beginning corner of said grant was a white oak, directly opposite what was known as the Upper Warm Springs at the date of the grant, and if you shall find from the evidence that the spring, as now located and described by the witnesses, is at the same place it was in 1803, and that there is no white oak now standing answering the description in said grant, then you will locate said beginning corner at a point on the east side of the river directly opposite the spring as now located." This instruction was refused and the plaintiff excepted. There was judgment for the defendant on the verdict and the plaintiff appealed.

*P. A. McElroy* for the plaintiff.
*Zachary & Roberts* for the defendant.

WALKER, J., after stating the case: The rule is well settled that a plaintiff in ejectment must recover, if at all, upon the strength of his own title and not upon the weakness of his adversary's. He must, in other words, show a title good against the world or good against the defendant, by estoppel. *Mobley v. Griffin,* 104 N. C., 112; *Campbell v. Everhart,* 139 N. C., 503. Under this rule, it becomes unnecessary to consider the instructions to the jury requested by the plaintiff other than the fourth, or the charge of the court, as the jury found that the beginning corner of the Brittain grant, from which the plaintiff deduced his title, was not at "A," but at the figure "1" as shown on the plat, and this finding, coupled with the plaintiff's admission that he could not succeed unless the location of that corner was at "A," defeats his recovery and therefore renders it useless to

consider any question relating to the location of the Gable grant under which the defendant claimed, or any other purely defensive matter. As the plaintiff himself states in his second prayer for instructions, the whole controversy hinges on whether the plaintiff's chain of title, or that of the defendant covers the *locus in quo*. If the court committed no error in refusing to give the instruction embraced in the plaintiff's fourth prayer, the verdict cannot be disturbed. The proposed instruction, as incorporated in the prayer, did not take in, as will readily be seen by a comparison of the two, all of the description contained in the Brittain grant, but if it had, His Honor should have refused to give the instruction as, if the oak had disappeared or "was not standing," there was ample evidence to show that a stump, which was identified as the stump of that particular oak, was there within the recollection of witnesses who testified to its location, and, besides, if no oak corresponding with the call could be found, and no stump, the jury would be left to conjecture as to where the oak had stood and, in the absence of definite information on this point, they were required by the prayer to ascertain at what particular place "below the mouth of the branch," opposite the Upper Warm Spring, the corner was at the time the grant was issued. But the grant did not call for a corner "directly opposite the spring," but for the corner (where the white oak stood) "below the mouth of the branch and opposite William Nelson, Jr., at the Upper Warm Spring on the east side of the French Broad river." One of the essential ingredients of the call, namely, "below the mouth of the branch and opposite to William Nelson, Jr.," is omitted from the prayer. His Honor did right in refusing to give the instruction upon the ground assigned by him, that the facts stated therein were too indefinite for a satisfactory location of the corner. *Mizell v. Simmons,* 79 N. C., 182; *Harry v. Graham,* 18 N. C., 76. As suggested by the example put in the case last cited, the nearest approach to the true corner,

in the absence of the tree to locate it, would not perhaps be, as stated in the plaintiff's prayer for instructions, at a point on the east side of the river directly opposite the spring, but at the mouth of the branch, as the nearest locative call, or physical object, mentioned in the grant. We do not say that the line should go there, but have merely cited those cases to show that the call, as set out in the instruction, falls under the class of those said to be too vague. It may be further said that it is not only uncertain as to how far below the mouth of the branch the tree was, but there is no distance stated by which to determine how far the line must extend in an opposite direction from William Nelson's or from the Upper Warm Spring, if the tree is not there. There is one further and serious objection to the prayer, for it assumes that if the tree is gone, there is no way of proving where it stood, and in this view it would exclude entirely from the case the evidence introduced by the plaintiff as to the finding of the stump of the oak tree and the location of the exact place where the tree once stood. There was also evidence that the tree itself was pointed out to one of the witnesses as the corner. A judge cannot so affirmatively charge the jury as to exclude from their consideration important evidence of either side bearing upon the material issue between the parties. When he fails to charge as to any particular phase of the case, his attention must be directed to the omission by a prayer for special instructions upon the matter thus overlooked, or his failure to charge cannot afterwards be assigned as error, but when he so charges as to eliminate from the case a substantial part of it, which would necessarily prejudice one of the parties, it will be reversible error. His Honor, therefore, for other good and sufficient reasons, than the one first given, properly refused to instruct the jury as he was requested by the plaintiff in the fourth prayer to do.

We have carefully examined the case and find that it is one which is governed by ordinary and familiar principles in

the law of ejectment and boundary, which were clearly and succinctly stated by the presiding judge and correctly applied to the facts.