## VAN BROWN v. JOHN HOUSE, et al.

*Boundaries—Survey—Calls in Grant or Deed—Course and Distance—Monuments.*

The decision of the case between same parties reported in 116 N. C. Reports, at page 859, was based upon correct principle and, supported by the citation of additional authorities, is sustained upon a petition to rehear and re-argument. (For syllabus see former report.) (AVERY, J., dissents, *arguendo*, in which CLARK, J., concurs.)

PETITION by defendants to rehear the case between same parties, decided at February Term, 1895, and reported in 116 N. C. Reports, 859.

*Messrs. J. M. Gudger, Jr.,* and *Shepherd & Busbee,* for petitioners.
*Mr. V. S. Lusk, contra.*

FURCHES, J.: This case was before us at Spring Term, 1895, and the opinion of the Court rendered at that Term is published in the 116 N. C., 859, and is now before us upon a petition to rehear. After a careful examination of the grounds alleged in the petition, we see no reason for reversing the judgment of the Court rendered on the former hearing. In our opinion the case was then put upon correct principle, and upon the facts in the case was correctly decided.

Being of this opinion, it does not become necessary for us at this time to review any argument in the opinion as then delivered, nor to explain or modify the same, nor to review, explain or correct any authority cited in support of our former opinion. The only thing we can do is to cite additional authority to sustain the judgment of the Court as heretofore rendered. The opinion of the Court

delivered at Spring Term, 1895, enunciates no new doctrine, as the petitioners seem to think it does. It recognizes the doctrine that course and distance contained in a deed or grant may be controlled by another call contained in the deed or grant, that is more certain than course and distance. It also recognizes the fact that a call for another tract of land has been held by this Court to be sufficient to vary course and distance, when the line called for was a known and established line at the date of the deed or grant calling for the same, and that, when a line so called for is *established*, it will control unless there are reasons to show that it was not in fact the line called for.

But, admitting all this, as we did in the former opinion, there are two infirmities in defendant's contention that are fatal to him. First, the Blount grant does not call for the "Stokley Donelson line," and secondly, the "Stokley Donelson line" was not established. The call is 3 0 chains south to a stake, *supposed to be* in Stokley Donelson's line. If the call had stopped at the word *stake*, we suppose no lawyer would have contended that the line south from the painted rock did not end when the 360 chains called for gave out. Then how can this be changed by the fact that it was *supposed* this stake was in Stokley Donelson's line, when in fact it was not? The Stokley Donelson line is not the point called for, but a *stake* at the south end of a line 360 chains in length, commencing at the painted rock. The term "*supposed to be in Stokley Donelson's line*," must be treated as surplusage, or as a term intended in explanation of or qualifying this point. Suppose I sell to A. my gray horse, Jackson, *supposed* to be twelve years old; but it turns out he is fifteen years old. I was mistaken in my *supposition*, but A. gets the horse and nothing more. Or I sell to A. my gray horse, Jackson, which I supposed to be at Stokley Donelson's,

and it turns out that he is not at Stokley Donelson's but at William Johnston's.   I was mistaken in my *supposition* that the horse was at Stokley Donelson's, but A. gets the horse just the same as if I had not been mistaken as to where he was.

As we have said, this is no new doctrine.   In *Harry* v. *Graham*, 1 D. & B., 76, where the call of the grant was to a black oak, near the line of another tract of the grantee, the black oak could not be found, and the distance called for gave out thirty poles short of the line of the grantee's other tract ; and it was held that the call, *near to*, would not carry the line *thirty* poles further, and that the line must terminate at the end of the distance called for.

In *Carson* v. *Burnett*, 1 D. & B., 546, it is held that course and distance called for must control unless there is another call more definite and certain than course and distance.   In *Kissam* v. *Gaylord*, Busbee, 116, it is held that course and distance must control, unless there is some other description or call in the conveyance that is more certain than course and distance.   In that case it was claimed by defendant to be a deed for a lot 200 feet square in the town of Plymouth, and the second call in the deed was along Jefferson street 200 feet, thence to the north-west corner of the "Winchell lot," and the lot being granted was known as the "Winchell lot."   To stop at the call of 200 would lack a few feet of going to the south-west corner, and would not cover the *locus in quo*.   And it was held that the line in the second call must stop at the end of 200 feet.

In *Spruill* v. *Davenport*, Busbee, 134, it is held that " course and distance govern in questions of boundary, unless controlled by some more certain description."   In this case the call was " to Benjamin Spruill's line and thence along his line and *Thomas* Mackey's line 300 poles to Greenland Swamp."   The plaintiff undertook to

reach Greenland Swamp by his lane, and the line of a tract that had belonged to one *William* Mackey—not being able to find any line of Thomas Mackey. And the court below sustained the view of the plaintiff and so instructed the jury. But this Court on appeal reversed the court below. PEARSON, J., delivering the opinion of the Court, said there was no evidence to take the case out of the general rule that course and distance control, and the court should have so instructed the jury.

In *Cansler* v. *Fite*, 5 Jones, 424, in a call in a deed south 300 poles to a Spanish oak *in or near Richmond's line*, and the Spanish oak could not be found, and the distance called for gave out 30 poles before *Richmond's* line was reached, it was held that the call "in or near Richmond's line" was too indefinite and uncertain to change course and distance, and that the line terminated at the end of the distance called for.

*Mizell* v. *Simmons*, 79 N. C., 182, cited in the former opinion of this Court must be overruled or the former opinion sustained. This opinion was simply cited in the former opinion of the Court, and, as that opinion has not been satisfactory to the counsel of defendant, we feel called upon to make some quotations from this well-considered opinion, bearing directly on the point under consideration in this case.

"A call in a grant for a line beginning at the mouth of a gut *supposed* to be J.'s bounds, running along his *supposed* line south 300 poles in the pocosin *to or near* the head of Speller's creek, &c., indicates that there was no *established or known line*, and, the course and distance being certain within themselves, must govern."

"In such case the calls, being from an established corner, south 300 poles to the pocosin, *to or near* the head of Speller's creek, the course and distance must prevail, without

being controlled by the words *to or near* the head of Speller's creek." "In such a case it was unnecessary as a matter of fact to ascertain where was the head of Speller's creek, because, as a matter of law, the terminus of the line was at the end of the course and distance called for."

These quotations are taken from the head note in *Mizell v. Simmons*, and sustain the view taken in the opinion that the call of 360 chains south to a stake, *supposed* to be in Stokley Donelson's line, cannot be used to control course and distance, which is considered certain in the absence of something more certain ; and we see from the authorities cited that this *supposition* contended for by defendant is not more certain—is not certain at all. This might end this examination of defendant's petition to rehear.

But we have said there was another infirmity in the claim of defense: That defendant had not established Stokley Donelson's line at the point where he claims they intersect. And this leads us to a short review of what was said in the former opinion as to marked lines tending to locate the Stokley Donelson grant. We are somewhat unprepared at this criticism of the opinion, when no such grounds were taken in a vigorous dissenting opinion by one member of the Court. But still, if injustice has been done the defendant, by neglect or inadvertence to the facts, such wrong should be corrected. Upon a review of the evidence we find that a Mr. Gudger and some other witnesses testified as to seeing some marks in former surveys, about 1856. But it seems that R. S. Tweed was appointed by the court to make an official survey of these lands, and upon the trial the defendants introduced him as a witness, and he testified as follows: "I began to survey at Index 28, (see official plat,) ran east to 29, ran south to 30, then 17 chains to 31, thence north 560 chains to 32,

thence east 1680 to 23, thence about 600 poles to the beginning. At the beginning I found some linn stumps on a branch; plaintiff was present and showed me the stumps; one stump 1½ feet through, and logs in what looked like a spring. I reversed the line and ran to north 23, and found same land, marked about 5 or 6 years old; from 23 we ran west to 22, and plaintiff said that he and I. N. Ebbs had run these lines, and ran them about as I ran, and showed me marks they made, and I understood that he said they were tracing the Donelson grant; found no land-marks, except marks made by Brown and Ebbs; this line crossed Spring creek." We therefore feel fully authorized to say that not a single marked tree is shown, going to establish the Donelson grant, unless it is to establish the beginning corner. The defendant claims that the Blount grant extends to an east and west line, between 22 and 23, some 20 miles long, where no tree or anything else was found at either 22 or 23, establishing a corner, and not a marked tree was found on the line, except a few made by Ebbs five or six years ago. And this is the mathematical line that plaintiff claims should govern and control the call in the Blount grant, and carry it a mile and a quarter further, after the distance gives out. The case of *Carson* v. *McCrary, supra,* relied on by defendants, is so different from the case before the Court that it hardly seems necessary to distinguish them. That is the case where the Court, PEARSON, C. J., delivering the opinion, speaks of the mathematical line. But that opinion is put on the ground that the corners at both ends of the line were known, and there was nothing to do but to run a straight line between these known corners. In that case, the plaintiff claimed under a grant for three hundred acres and the defendant claimed under a junior grant for 100 acres, but calling to commence on and to run with

plaintiff's line.   This being so, the Court properly held
that defendant's land ran to and with plaintiff's line.
That is not our case.

The former opinion of the Court has been criticised for
indulging in some speculation as to the history of what is
known and called speculation grants.   And it was inti-
mated that the Court was not disposed to give these spec-
ulators the same measure of justice that it gives others.
We do not think the Court is justly liable to this criti-
cism.   We have no idea that there is a single member of
this Court who would not give such speculators every foot
of land they thought them justly entitled to, and not one
of them who would give them a foot more.   All we know
about the titles in this case is from deeds and grants offered
in evidence.   The plaintiff offered a grant dated in 1890,
which is admitted covers the land he claims.   The defend-
ant then offered a grant to Blount in 1795, a grant to
Stokley Donelson in 1790, and a deed from Sawyer to
William Johnston, and we suppose the defendants claim
under Johnston or his heirs.

What we said amounts to no more than had been said
by this Court before.   In *Cherry* v. *Slade*, 3 Murphy, 82,
TAYLOR, C. J., delivering the opinion of the Court said :
" In many cases, surveys were in no otherwise made than
upon paper."   This was said in reference to early grants.
And in the case of *Literary Board* v. *Clark*, 9 Ired., 58,
RUFFIN, C. J., delivering the opinion of the Court, in
speaking of the omission in a plat to note a water-course
called for in the grant, said : " The omission renders it
highly probable that the plat was made without actual
survey, and thus deprives it of whatever credit it might
otherwise be entitled to."   This was the view presented
in the opinion heretofore rendered, that in all probability
the Blount grant and Donelson grant were both located

BROWN *v.* HOUSE.

without an actual survey, and were therefore not entitled to the credit they might otherwise be entitled to. What is a boundary is a question of law for the court, and where this boundary is is a question of fact for the jury. *Jones* v. *Bunker*, 83 N. C., 326 ; *Burnett* v. *Thompson*, 13 Ired., 379 ; *Marshall* v. *Fisher*, 1 Jones, 111 ; *Clark* v. *Wagoner*, 70 N. C., 706. We are of the opinion, from the evidence in this case, that the court, as a matter of law, should have instructed the jury that the stake—the imaginary point— at which the 360 chains give out, on the line south from the beginning corner on the birch on the south side of the river opposite the painted rock, was the south-west corner of the Blount grant, and that the line ran east from that point. This was substantially the plaintiff's prayer for instruction, which was refused. There was error, and defendant's petition is denied.

Error.

AVERY, J. (dissenting): The two calls in the grant to John Gray Blount, offered by the defendant, and which gave rise to the controversy, were: " South 360 chains to a stake supposed to be in Stokley Donelson's line, thence with his line 390 chains to his north-east corner." The learned judge and experienced real-estate lawyer who tried the case below was asked to instruct the jury that those two calls taken together were too vague and uncertain to vary course and distance, and should therefore have been run 360 poles from the admitted beginning at Paint Rock, and thence east from the point where the distance gave out, 390 poles. Instead of complying with the request the judge told the jury that the first call, " 360 chains to a stake near Stokley Donelson's line," standing alone and of itself could not be extended beyond the actual distance, and therefore if counsel for the defendant contended that it should have been extended, that question was not raised

by the appeal. But the judge did instruct the jury that, construing the second call with the first, if they considered the evidence sufficient to locate the Donelson line, as one that had been run and marked, or that it was susceptible of being located with mathematical certainty by running from known points, then the second call would run from the end of the first to the nearest point on the Donelson line, and with it east three hundred and ninety poles.

Pretermitting the inquiry as to the sufficiency of the evidence submitted to the jury to determine whether there was either a marked or a mathematical line of the Stokley Donelson survey located so that an extension of the first line from the end of the distance (360 poles) would intersect it, we are confronted at the outset with the question whether the first and second call, construed together, ought to have been run—as his Honor told the jury—to such line; if established satisfactorily to them in either way.

1. Addressing the argument to this point first, we will find that our Reports furnish a long line of authorities bearing directly upon it and beginning as far back as the Conference Reports, when the land law of North Carolina, in its formative period, was shaped by jurists whose good judgment and practical knowledge of surveying, as well as clear apprehension of legal principles, fitted them in an eminent degree for the task of adapting the expansive principles of the common-law to a new subject in a new country.

In the early case of *Doe on the demise of Sandifer* v. *Foster*, 1 Hay., 283, the call next to the last of a deed was for a white oak, (which stood a half mile from the river,) and the last call was " thence along the river to the beginning." The Court held that the line should be extended from the white oak a half mile, and then run with the river to the beginning, though by so running, instead of

directly from the white oak to the beginning, a large additional area of land would be embraced in the patent, and the reason given was that it had always been thus uniformly decided in this Court.

In *Hartsfield* v. *Westbroook*, 1 Hay., 258 (297), the call was from a tree not at a swamp to another not at the swamp down the swamp to the beginning. The Court declared the true line to be to the swamp from the first tree, then with the swamp to a point opposite the second tree. The two cases last mentioned are cited with approval in *Baxter* v. *Wilson*, 95 N. C., 137.

This principle is familiar to layman and lawyer in the practical application of it upon which a call from one corner tree to another on the bank of a stream runs *ad filum aquæ* to a point opposite the corner called for and then to it by a course at a right angle with the general direction of the stream between the two points.

The rule laid down in the early case of *Bradford* v. *Hill*, 2 Hay., 30 (22), was that courses and distances must be observed except where a natural boundary is called for and shown, or when marked lines and *corners can be shown to have been made at the original survey.*

When the call is from one known corner to another, by a certain course and distance " but with " a certain public road, the line must be varied from course and distance so as to run to and with the public road ; and, as between two branches of the road, it is for *the jury to determine* which was the public road *when the deed was executed. Hough* v. *Horn*, 4 D. & B., 228. A striking instance of the rule requiring an off-set to be made to intersect with and run with marked lines in order to fulfill all of the descriptions of a deed, is found in *Blount* v. *Benbury*, 2 Hay., 542 (353), where the call was running south 85 east with Beasley's and Blount's lines, Blount's line being located

51 poles north of and parallel with the other. The Court held that it should be run with Beasley's line till it gave out, and then 31 poles to Benbury's line and with it, Judge HALL giving as a reason that there " had been many decisions in this country which warrant a departure from the line described in a deed or patent, to follow a *marked line which the jury have good reason to believe was the true one.*" The doctrine of filling as nearly as possible all of the descriptions is founded upon the familiar rule that a contract should be so construed as, if possible, to give effect to all of its provisions, and is commended in its application to questions of boundary in *Shaffer* v. *Hahn*, 111 N. C., 1, and *Buckner* v. *Anderson, Ibid.*, 572. Another case exactly on all fours with this, and in which the Court cited and approved *Blount* v. *Benbury, supra*, was *Fruit* v. *Brower*, 2 Hawks., 337. There, the call which gave rise to the controversy was from a marked corner, a black oak " along said old line (Thomas Williams') west to a stake in McGee's line." The court below instructed the jury that the line extended to Thomas Williams' old line, wherever that was, notwithstanding the black oak corner and a line marked from it in the proper direction, and this ruling was affirmed. The effect there was to locate the line by running from the black oak about twenty poles at a right angle to it, (as it is here proposed to run to the Donelson line,) and thence with the Thomas Williams line so as to increase the acreage embraced in the tract by this departure from the course about one-fourth. A glance at the calls of the Blount grant will show that the proportional increase in this case is not in any aspect of the evidence one-third. The two last cases are cited in *Dobson* v. *Whisenhant*, 101 N. C., 648. A deed of conveyance is an executed contract, and in its interpretation we must begin with the admission that the description, if

sufficient, is so far ambiguous as to require parol testimony "to fit it to the thing." *Safret* v. *Hartman*, 7 Jones, 199. Where the calls are conflicting the courts incline always to adopt that which is the more certain, following the fundamental principle upon which the whole of the law of evidence is founded. Hence, in the absence of proof of a line and corners actually run and marked and agreed upon by both of the parties when they entered into the contract, a call for a natural object is deemed more certain than course or distance, and when identified will control both. In *McPhail* v. *Gilchrist*, 7 Ired., 169, the two last calls of the deed were " thence north 87 west 179 poles to a hickory, thence the course of the swamp to the beginning." The distance gave out nine chains and fifty links from the swamp, and there was no hickory found, nor was its previous existence at any place shown. This Court approved of the charge of the judge that the line must be extended to the swamp, (just as in this case to Donelson's line,) and thence to the beginning. *Hurley* v. *Morgan*, 1 D. & B., 425 ; *Lynch* v. *Allen*, 4 Dev., 62 ; *Bectton* v. *Chesnutt*, *Ibid.*, 335 ; *Stapleford* v. *Brinson*, 2 Ired., 311 ; *McPhail* v. *Gilchrist, supra ; Literary Board* v. *Clark*, 9 Ired., 58 ; *Spruill* v. *Davenport*, 1 Jones, 203 ; *Waters* v. *Simmons*, 7 Jones, 541 ; *Strickland* v. *Drawhorn*, 88 N. C., 315 ; *Brittain* v. *Daniels*, 94 N. C., 781 ; *Redmond* v. *Stepp*, 100 N. C., 212.

2. If it is undeniably true, as the authorities cited and others which might be added, show, that the call thence with Stokley Donelson's line would prolong the first line till it should intersect that line, and then run with it, if it could be established to the satisfaction of the jury, we are brought to the discussion, first, of the question whether the judge below erred in holding that there was evidence, which the defendant had a right to demand should be sub-

118—56

mitted to the jury as tending to show the existence of the
old marked Donelson line ; and that, if the jury believed
it was ascertained, as contended by the defendant, they
should locate the second call by running from the end of
the call for 360 chains to it, and then with it.   The Court,
in the opinion in the former case, was not advertent to the
testimony offered to show the line of the Donelson tract,
to which defendant contends that the line of the Blount
grant extends.   A. M. Gudger testified that he was pres-
ent when Blackstock ran the Stokley Donelson line from
the line trees (which are called for as dogwood in the third
call of the Blount grant).   He testifies that Blackstock,
a surveyor, in the year 1856, blocked a linn tree at the
point now claimed by defendant, to be the Stokley Don-
elson corner, and the marks corresponded by count with
the date of the Donaldson grant.   He further testifies that
Blackstock the surveyor, and Job Massey, both now dead,
told him the linns were the corner.   A. M. Gudger testified
that, in running from those trees 275 chains north, to the
north-east corner, (called for in the Blount grant, and thence
along the line of the Donelson tract, which the defendant
insists he has so located as to extend his line to it,) he and
Blackstock found, 40 years ago, old marked line trees on
that north line.   Dr. Reynolds testified that he had
always heard the point now spoken of by Gudger as the
linn corner called the Stokley Donelson beginning cor-
ner, and that he ran the Donelson deed from it north,
and then along what is the north line, with which defend-
ant claims to run east, and found " old marks—very old "
along the line.   Robert Justice testified that one Davis,
now dead, showed him the linn stumps, and said that was
the Donelson corner, and that the place was called by
some the " Reynolds Camp," and by some " Puncheon
Camp," by both of which descriptions its location is indi-

cated in the grant, and that the place corresponded with the grant, in that it was near a spring. In running from the linns so pointed out, it seems that Justice also found old marked trees that Davis said were the linn trees of the Donelson grant, but his testimony is not given very fully or stated very clearly upon that subject. Tweed, the last surveyor, ran from a linn stump near a spring, shown to him as the beginning corner of the Donelson grant by the plaintiff. He found no marks.

It was contended that the testimony that a stump was shown which was reputed to be a corner was not evidence to go to the jury. In *Murray* v. *Spencer*, 88 N. C., 357, it was held that a stump without a mark upon it, but which had been pointed to as a corner by reputation for 30 years, was some evidence that a line had been run corresponding with the first call of the grant, from that stump as a beginning, and citing *Icehour* v. *Rives*, 10 Ired., 256, (where he said the very point was decided,) Justice RUFFIN added : " This must of necessity be so, or else the very flow of time, which should give sanctity and security to titles, will ultimately undermine them by destoying the perishable objects denominated as their boundaries and removing the witnesses acquainted with the localities." There being some evidence of marked lines, the question was properly submitted to the jury, and if they found, even upon evidence of reputation, that there were old marked line trees along the Donelson line as contended by defendant, and believed they indicated the location of the true Donelson line, the first line of the Blount grant should have been extended. " In questions of boundary, marked lines or trees are more certain than course and distance, and should control them." *McNeill* v. *Massey*, 3 Hawks., 91. Judge HENDERSON said in this case: " Whether they (the lines called for by adjacent patents) proved that marked trees were once

there, is an inference of fact that belongs to the jury.........If such were not the law, most of our patents would change their locality, as our marked trees decayed, and as our proofs direct of their having once stood there were lost." The reasoning in that case would have justified the court below in telling the jury that they might infer the location of the line of an adjacent tract when a survey of it from known points fixed the location of such line. The earlier cases of *Reddick* v. *Leggat*, 3 Murphy, 529; *Orbison* v. *Morrison, Id.*, 551; and *Tate* v. *Greenlee, Id.*, 556, all concur upon the point that where there is any evidence tending to establish the location of a line it is the province of the jury to determine where it is, and it is error in the court to express an opinion as to its location. There being evidence of the existence of a marked line, the judge properly left the jury to determine its sufficiency to establish the line.

How is a mathematical line, or one that can be established "with mathematical certainty," (which the trial judge properly held to be synonymous) to be defined? Evidently "mathematical" is used in the sense of "demonstrable by the use of mathematics," or by the rules of surveying, which is a branch of the science of mathematics. The question as presented by the learned reporters in *Beckton* v. *Chesnutt, supra,* was whether a branch as a distant natural object was to be followed "in preference to the mathematical description by course and distance." *Id certum est quod certum reddi potest* is the maxim which furnishes the test of the sufficiency of a description in a deed of conveyance; (*Mann* v. *Taylor*, 4 Jones, 273) and hence where there is a single corner which can be identified and located, the surveyor can run from that, when the course and distance of other calls are given, and establish the location of all the other lines and corners by

the "mathematical description of course and distance."
It is a mathematical axiom that two points establish the
direction of a line and that two points at either end being
ascertained will locate the whole line.    But it is equally
an axiomatic truth that one of five or six corners being
known, and the distances of every call given, a tract of land
can be located with mathematical certainty, that being
regarded in law as certain which can be made certain by
the survey.   *Hinchey* v. *Nichols,* 72 N. C., 66.    "The line
of another tract, which is called for controls course and dis-
tance, being considered the more certain description, and it
makes no difference," says PEARSON, J., in *Corn* v. *McCrary,*
3 Jones, at p. 499, "whether it is a marked or unmarked or
mathematical line, (as it is termed in the case,) *provided it
be the line that is called for."*    But it is contended that no
line is a mathematical line, within the rule laid down by
PEARSON, J., unless both ends of it are located.    This conten-
tion is based upon the idea that, in a single case where the
unmarked line was held sufficient as a mathematical line,
the two corners at either happened to be proved.    But
this is a *non sequitur.*   In *Corn* v. *McCrary,* there was
testimony tending to show a chestnut corner at one end of
the line 5, 6, just as there was evidence in our case from
which the jury might have found one marked corner of
the particular line called for.   If, however, the jury believed
that the line corner was located where Gudger testified
that Blackstock blocked the tree, and where the location
was fixed by so much hearsay testimony and by reputation;
strengthened by the proximity of the spring called for,
then, the course and distance of every line being given,
the surveyor, under the maxim, *id certum est quod certum
reddi potest,* could, by a survey made according to the
rules prescribed in every mathematical treatise on survey-
ing, have ascertained with absolute certainty the location

of the lines, and thereby have " fitted the description to the thing." Who has arbitrarily prescribed the rule that a line, located by the two points admitted to be at each end of it, is any more a mathematical line than when the two ends are ascertained by measuring the known distance from other known objects, and from each other ? Both lines are located upon mathematical axioms and with mathematical certainty.

In the former opinion the Court was inadvertent to the law as well as the facts in holding that the number of acres included in the boundary as run, upon the different theories of the parties, could be considered by the jury, much less by the court, in coming to a conclusion as to the location. At most, quantity was but a circumstance to be considered by the jury for what they deemed it worth, not by the court as conclusive of the location of a line as a question of law. What are boundaries is a question of law. Where they are to be located by quantity or other competent evidence is to be determined by the jury. " If one grant to S. S. 1,000 acres and no more, according to certain lines and include 2,000 acres, (said the Court in *Reddick* v. *Leggatt, supra,*) the 2,000 acres pass, because the buts and bounds are more certain than the quantity." So the buts and bounds, if fixed by the jury (as it was their province to do) so as to extend to the Donelson line, are more certain than quantity, and upon that principle must control. In *Miller* v. *White,* Taylor's Rep., 309, (Battle's Ed., 135,) a line calling for 40 poles was held to be properly located by extending it 40 poles further, or double the distance, to reach a line called for. In *Johnston* v. *House,* 2 Hay., 301, though it appeared that the surveyor made his certificate extending a line only 80 poles instead of 160, when he had made a line in his certificate, in order to reduce the acreage from 712 to that called for, (640 acres,) the Court held

that the line was properly extended to the marked corner at 160 poles.   Numberless instances can be shown where the acreage was proved to have largely exceeded that called for, yet no instance, except in the opinion in this case, can be found, where, in a suit between private parties, course and distance have been declared by the Court sufficient in law to control, instead of a call for a natural boundary, lest a patentee should hold too many acres.   Whether the State has been defrauded is not a question to be considered in settling conflicting claims of individuals involving the location of boundaries.   If the courts are to determine, where the testimony is conflicting, whether a given boundary includes a reasonable number of acres, how can counsel advise clients, when the calls of a grant happen to include more than the number of acres specified?   It is better that the law should be wrong than uncertain.

But there are two other reasons why quantity should not be considered in this case:   First, the land inside of the boundary which had been granted by older patents was expressly excepted, and the area of that is left by the evidence uncertain, though the burden was upon the plaintiff to show fraud, if it was competent for him to prove it.   In the second place, it was in evidence that the surveyor made a mistake in running another line that, if corrected, would have extended the call east 360 chains, much nearer to the line claimed by the defendant to be Donelson's line, and would have reduced the acreage correspondingly.   For the reasons given the charge of the court below was not erroneous, and the judgment ought to have been affirmed.

CLARK, J.:   I concur in the dissenting opinion.