WILSON LUMBER AND MILLING COMPANY v. HUTTON &
BOURBONNAIS ET AL.

(Filed 11 May, 1910.)

1. **Deeds and Conveyances—Description—Calls—Natural Boundaries
—Interpretation—Exception to Rule.**

   A natural boundary called for in the description of land in a grant controls course and distance, for the reason that it is usually considered more certain; but when the course, distance, number of acres and plat given are more definite, and the application of the general rule inconsistent, the latter must give place to the former, the reason for the rule ceasing, and presenting a case which forms an exception to the rule.

2. **Same—Established Boundaries.**

   The first call in a grant of lands being 100 poles from an established corner to a stake in the line of M., and it appearing that the surveyor and grantee did not know at the time where that line was located, and there was no actual survey, the M. line will not be regarded as established so as to control the call and extend the line 274 poles in disregard of the call sufficiently established by the description in the grant.

3. Same.

When the course and distance of a grant, purporting to convey 50 acres of land, are clear and definite, the adjoining owners being given, and from the plat attached it appears that the acres granted were in the form of a parallelogram 80 by 100 poles, with boundaries and acreage exactly corresponding to those of the grant, the record call, "80 poles W. to a stake," cannot be filled by running from a stake, an unknown point, "S. W. 319 poles" to the third call, which was a point in dispute and unsettled at the time of the survey, and which would cut in half a tract of an adjoining owner; nor can the third call be filled by running from a disputed point a greater number of poles than that given by the grant; nor the last call, "then E. (with a certain line) to the beginning," be filled by running 400 poles, the description contended for embracing an acreage of fourteen times that which the grant purports to convey.

4. State's Lands—Grants—Maps Attached—Evidence.

The statutes require that the surveyor make two plats of the land granted by the State, and record thereon the courses, distances, etc., one of which shall be attached to the grant and the other filed in the office of the Secretary of State (Revisal, secs. 1716, 1734). Such plats are evidence of description, boundaries, etc., in an action involving those questions.

5. Same—Acreage.

The number of acres of land which the grant purports to convey is evidence in aid of courses and distances, when the courses and distances given in the grant of a tract of land, not actually surveyed at the time, exactly agree with the quantity of land described as conveyed and with the plat attached to the grant, and to discard them would increase the quantity of land to fourteen times that for which the State was paid.

6. State's Land—Grants—Acreage—Tax Books—Corroborative Evidence.

The tax list is competent evidence to show that the grantee of State's land gave in the tract granted as 50 acres, in corroboration of his testimony that he entered only that quantity of land, in an action wherein the number of acres given in the grant is allowed as evidence to establish the courses and distances therein given.

HOKE, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL from *Councill, J.,* at November Term, 1909, of CALDWELL.

The facts are stated in the opinion of the Court.

*Jones, Whisnant, Finley* and *Hendren* for plaintiff.
*Mark Squires, W. C. Newland, M. N. Harshaw, E. B. Cline* and *J. T. Perkins* for defendant.

N

W — E

S

Scale 50 P. = 1 Inch

WILSON · LUMBER · & · MILLING · CO,

VS.

HUTTON & BURBONNIAS.

T. L. Bandy

J. L. Kirby  Surveyors

Nov. 25th 1909.

Daniel Moore
50 A.
#2822
E 125 P.

Lynn

B

28 P.

st.

80

Daniel Moore

Globe Mt.

Branch

River

Beech

Hickory

S.G #8710 in 1888.
to
J. M. Hauck
now
W. L + M. Co.

N 33° W 374 P.

Chest'. Oak.

Maple  W 80 P

John Crisp
50 A.
#720
1868.

S 35° E

S 33° E 200 P.

N 35° W 100 P.

A  Black Pine

Flat Rock.

34 P.

Alexander Martin
200 A
1789.

Daniel Moore

Johns

Burnt

Field

Branch

S 35° W 319½ P.

N 200 P.

Pine

St.

E 64 P.

C

W. Pine
(Now gone)

Black
Pine

St.
D.W.

320½ P.

Branch

Jesse

Deep

Grassy
Waters
tract
1792

S 126 P (212½ P.)

N 175 P (215½ P.)

Johns

S.G.
to
D. Moor
50 A.
1899.

st.

N 80 P

W. Pine
in Island

E 100 P

Maple
st.

River

Webb's

st.

John Crisp
25 A
E 85 P

W.O.

John Crisp
John Sims
25 A.
1850

125 P

N 13° W 175 P

52 P

st. 13

st.

Mill

Creek

Creek

Mill

N 48° E 200 P

John
100 A
1843

S 48° W 200 P

N 45° W 80 P

st.

S 35° E 368½ P
S 33° E 368½ P
S 25½° E 320½ P
S 30° E 320½ P

st.

st. 3  2
W 8.5 P

st.

S 42 P

W.P.

N 45 P

st.

Mill  Creek

CLARK, C. J.  On 30 June, 1868, the State issued to John Crisp a grant for "50 acres of land" in Caldwell County, described as follows: "On dividing ridge between John's River and Mulberry Creek, adjoining his own land. Beginning on a black pine near the flatrock, and runs N. 35 degrees W. 100 poles to a stake in Daniel Moore's line; then W. 80 poles to a stake in Jesse Gragg's line, then S. 35 degrees E. 100 poles to stake in his own line; then E. with said line to the beginning." The beginning corner of said grant is not in dispute, but is admitted to be at the black pine "A," as shown on the map. . The line of said grant, if run according to the contention of the plaintiff—that is, by course and distance—would embrace 50 acres.  If run according to the contention of the defendants, the grant would cover about 700 acres, or fourteen times as much as was granted.  The grantee, John Crisp, testifies that he took out a grant for only 50 acres with the view of adding a flat cove to his adjoining land.  He stated that he never claimed more than 50 acres; that he had listed the land and paid taxes for only 50 acres; that he paid the State for only 50 acres and in conveying it he only conveyed it for 50 acres.  At the time the survey was made for the grant, no lines were in fact run, and the land was platted merely from the courses and distances recited in the entry and grant.

The defendants contend that course and distance should be disregarded and the acreage also and all the above facts, and that the first line should be extended to Daniel Moore's line, though this would be 274 poles instead of 100 poles, as stated in the grant; that, instead of the second call in the grant, 80 poles W. to a stake in Jesse Gragg's line, "the second line should be run S. 35 degrees W. 319½ poles to a corner of Jesse Gragg's line," though the evidence is that this corner was in dispute at the time that the grant was taken out, and therefore not *established.*  In running this second line as contended by the defendants it would cross through two older tracts of lands which belonged at the time of the survey to Daniel Moore, showing that the surveyor did not know where either Moore's or Gragg's line was.  Indeed, John Crisp expressly so testified. The third line, according to the grant, is S. 35 degrees E. 100 poles to a stake in Crisp's own line.  Running by this course and distance it would strike a point in Crisp's line which would run thence E. to the beginning.  But, run as contended by the defendants, it would cut in half another tract of Daniel Moore's and run 338 poles instead of 100 poles, as called for in the grant.  The fourth line, according to the grant, would be with Crisp's line E. to the beginning.  But if run according to the

defendants' contention, instead of running E. 80 poles to the beginning (as called for in the grant), the line would run five different courses with Crisp's line, and in all about 400 poles, to get back to the beginning. Instead of the 50 acres granted Crisp, the defendants would get 700 acres, 650 of which the plaintiff has paid the State for, and for 50 of which only the grantor of the defendants paid the State.

It is true that the general rule is that course and distance must give way to a call for a natural boundary, and that the line of an adjacent tract, if well known and established, is a natural boundary. But this is because such natural boundary is usually considered more certain, being at a fixed and definite place, if "established and known," and therefore unchangeable and more likely to be the true call in the deed than course and distance, which may, by inadvertence, be incorrectly written down. The reason of the law is the life thereof. *Ratione cessante, cessat ipsa lex.* The rule of construction which ordinarily prefers the call for the boundary of another tract to course· and distance is based upon the reason that the former is usually more certain than the latter, and only applies when the boundary of the other tract is established and well known.

It will be noted that the first call in this grant is for 100 poles, whereas to go to the Daniel Moore line would be 274 poles. In *Brown v. House,* 116 N. C., 859, and *s. c.,* 118 N. C., 870, the Court refused to extend a 20-mile line 1¼ miles beyond the distance called for because of a call for a stake "in Stokely Donelson's line (an extension of 1-16 of the distance). Here the defendants asked to extend the distance from 100· poles to 274 poles, and there is not even the further provision, which there was in *Brown v. House,* "and· thence with Daniel Moore's line." Then, in this case, there is the evidence that as matter of fact the line was never run to Daniel Moore's line, and that neither the grantee nor the surveyor knew where it was. The call is not even for a monument or a marked tree in Daniel Moore's line, but only for a stake. If Daniel Moore's line was established at that time, it was not known to the surveyor and grantee where it was, and hence it was not established so far as they were concerned.

The second call of the grant, "80 poles W. to a stake in Jesse Gragg's line," cannot possibly be filled by running from a stake, an unknown point, "S. W. 319½ poles to Gragg's corner" (a point which was in dispute and unsettled at the time of the survey) and cutting in half a tract of Daniel Moore's to do so. The third call in the grant, "S. 35 degrees E. 100 poles to a stake in John Crisp's line," cannot be filled by running from a

disputed point of Gragg's line "338 poles to a stake in John Crisp's line." Nor can the last call, "then E. with Crisp line to the beginning" (which by the course and distance in the grant would be 80 poles, for the grant by the plat attached thereto and the acreage is a parallelogram), be filled by running five different courses 400 poles to the beginning, as the defendants contend.

The plat which is attached to the grant shows a parallelogram 80 poles by 100 poles, with boundaries and acreage exactly corresponding to those set out in the grant.

The statute, Rev., 1716, requires the surveyor to make two plats and record thereon the courses, distances and watercourses crossed; and section 1734 requires that one of these plats shall be attached to the grant and the other filed in the Secretary of State's office. This makes the plats evidence. *Redmond v. Mullenax,* 113 N. C., 512; *Higdon v. Rice,* 119 N. C., 631. When these plats, the courses and distances and the acreage all correspond, as they do in this case, they are more certain than the wild result which would be obtained by departing from them in attempting to give a preference to the call for Daniel Moore's line when there was no actual survey, and the surveyor and grantee did not know where it was.

While acreage is usually postponed to other descriptions, there are cases in which the Court has held that it was a potent, if not a conclusive factor. It was so held in *Cox v. Cox,* 91 N. C., 256. In *Baxter v. Wilson,* 95 N. C., 137, it was held that the number of acres in some cases may have a controlling effect. In *Peebles v. Graham,* 128 N. C., 227, the Court says: "The general rule is that the quantity of land stated to be conveyed will not be considered in determining locations or boundaries. But there is a well-known exception to this rule, that is as firmly established as the rule itself; and that is this: "Where the location or boundary is doubtful, quantity becomes important. *Brown v. House,* 116 N. C., 866; *Cox v. Cox,* 91 N. C., 356." The Court further said, quoting from *Mayo v. Blount,* 23 N. C., 283: "A perfect description which fully ascertains the *corpus* is not to be defeated by the addition of further and false descriptions." Certainly, no stronger case for the application of this principle can be found than in this, where the courses and distances given in the grant of the tract which was not actually surveyed are found to agree exactly with the quantity of 50 acres described as conveyed, and with the plat attached to the grant, and where to discard them would increase the quantity of land to fourteen times that for which the State was paid.

In *Brown v. House,* 116 N. C., 866, where to extend the line to a stake in the boundary of another tract which was called for would have increased two to three times the acreage stated in the grant (which also corresponded with the acreage obtained by following the courses and distances), the Court refused to discard course and distance and follow the call for a stake in the boundary of another tract, "and thence with such boundary." In the same case on rehearing, 118 N. C., 870, the Court reaffirmed its ruling and cited *Harry v. Graham,* 18 N. C., 76, "where the distance called for gave out 30 poles short of the line of the other tract, the Court refused to extend the line 30 poles and held that it must terminate at the end of the distance called for." It also cited *Carson v. Burnett,* 18 N. C., 546, which held that "the course and distance called for must control unless there is another call more definite and certain than course and distance," and cited *Kissam v. Gaylord,* 44 N. C., 116; *Spruill v. Davenport, ib.,* 134; *Cansler v. Fite,* 50 N. C., 424, and *Mizell v. Simmons,* 79 N. C., 182, all to the same effect. The facts of this case are entirely different from those in *Whitaker v. Cover,* 140 N. C., 280, which recognizes merely the general rule, which is not denied, but to which the facts make this case an exception.

The tax list for 1873 was competent to show that John Crisp gave in the tract of land for taxation for 50 acres and to corroborate his testimony that he entered only 50 acres and had never claimed any more.

The plaintiff asked the court to charge: "1. If there be more than one description in the deed or grant and they turn out upon evidence not to agree, that is to be adopted which is the most certain. Course and distance from a given point is certain description in itself, and therefore not to be departed from, unless there be something else which proves the course and distance stated in the deed or grant was thus stated by mistake. *Harry v. Graham,* 18 N. C., 80.

"2. If the jury shall find from the evidence that the grantee at the time of taking out the grant did not know where the Moore line was, and there was no general reputation at the time of its location, the call for such line would not displace course and distance, although it can now be ascertained mathematically, because it does not furnish as probable and rational evidence as course and distance; it would be appealing from evidence, certain to a common intent, to a thing altogether unknown to the parties at the time. *Carson v. Burnett,* 18 N. C., 558.

"3. If the jury shall find from the evidence that at the time of making the survey and taking out the grant, the location of

the Daniel Moore line was unknown to the grantee, John Crisp, and there was no general reputation of such location, although John Crisp may have known that Daniel Moore had land somewhere in that direction and may have supposed the line of the same to be at the end of 100 poles from the black pine, whereas, as has been since ascertained, it is 274 poles to Daniel Moore's line, then the court charges you that the course and distance is more certain than the call for Daniel Moore's line, and the termination of the first line would be at the end of 100 poles marked 'Chestnut Oak' on the map.

"8. In doubtful cases, quantity may have weight over circumstances in aid of the description, and in some cases may have a controlling effect.

"9. The first call in defendants' grant being North 35 W. 100 poles to stake in Daniel Moore's line, and the distance from the point of beginning being nearly three times as far, or 274 poles, and the testimony of John Crisp being that at the time of the survey that no line was actually run, except for the distance of a few poles, and that he did not know where the Daniel Moore line was, the jury are instructed that this call is too vague and uncertain to vary the distance called for in the grant, and the first line should terminate where the 100 poles give out.

"10. The second call in defendant's grant being W. 80 poles to a stake in Jesse Gragg's line, and Jesse Gragg's line being unknown at the time and it being necessary in order to reach any line of Jesse Gragg's from a point where defendants claim their first line should run, to change this course and distance from due W. to S. 35 W., or almost run at right angles, and to run 319½ poles instead of 80 poles, or nearly four times as far, and so doing to cross the lines of older grants twice, the jury are instructed that this call is too vague and uncertain to vary the course and distance called for in defendants' grant, and that defendants' second line should run 80 poles W. as called for in the grant.

"11. The third call in defendants' grant being S. 35 E. 100 poles to stake in his own line, and it being necessary, in order to reach the nearest point in his own line, to run 338 poles instead of 100 poles, or more than three times as far, and in so doing again cross the line of an older tract, providing the line is run from a point in Jesse Gragg's line where defendants claim their second line terminates, the jury are instructed that this call is too vague and uncertain to vary the course and distance called for in the defendants' grant, and the defendants' third line should run S. 35 E. 100 poles, as called for in the grant, from a point 80 poles W. of the point marked 'Chestnut Oak' on the map.

"12. To vary the course and distance as called for in defendants' grant, so as to increase the distance of the first line from 100 poles to 274 poles; to change the course of the second line from due W. to S. 35 W., or nearly turn at right angles, and to increase the distance of said line from 80 poles to 319½ poles, or nearly four times as far; to increase the distance of the third line from 100 poles to 338 poles, with the result that the lineal measurement of defendants' fourth line, or southern boundary thereof, is practically 354 poles instead of 80 poles, said southern boundary being changed from a line 80 poles long running due E. to an irregular line, and with the further result that the quantity of land embraced in defendants' grant would be increased from 50 acres to 700 acres, or practically fourteen times the amount called for in the grant—such a variation from course and distance is so great as to shock probability, to sacrifice the certain for the uncertain, and the jury are instructed that the boundaries of defendants' grant are to be located with reference to the courses and distances named therein."

In failing or refusing to give above prayers, there was Error.

HOKE, J., *dissenting:* As I understand and interpret the testimony, it shows that both the lines of the Daniel Moore tract and of the Jesse Gragg tract called for as indicating the termini of two of the lines of defendants' grant were *fixed* and established; and where this is true our decisions have been wellnigh uniform to the effect that such calls as a rule will control course and distance; and applying this generally accepted principle, I am of opinion that, according to our precedents, the case was correctly tried below and the judgment should be affirmed.

WALKER, J., concurs in dissenting opinion.