WILSON LUMBER AND MILLING COMPANY v. HUTTON & BOURBONNAIS COMPANY ET AL.

(Filed 28 May, 1912.)

**1. Deeds and Conveyances—Calls—Adjoining Lines—Evidence.**
   When the line of another tract of land is definitely called for as one of the termini in a grant or deed, and this line is fixed and established, it will control a call by course and distance, whether such line is marked or unmarked.

**2. Same—Questions for Jury.**
   Additional evidence being offered by the defendant since the last appeal of this case, tending to show that the line of another tract called for as one of the termini and boundary in his grant was a well-recognized and established line or lines closing the survey and boundary as contended for and claimed by him, it is held that the question of location was properly submitted to the jury.

CLARK, C. J., dissenting; BROWN, J., concurring in the dissenting opinion.

APPEAL from *Long, J.,* at May Term, 1911, of CALDWELL.

Civil action, trespass to realty. There was verdict for defendant. Judgment on the verdict, and plaintiff excepted and appealed.

The facts are sufficiently stated in the *per curiam* opinion.

*Edmund Jones and Finley & Hendren for plaintiff.*

*W. C. Newland, J. T. Perkins, Mark Squires, and Council & Yount for defendant.*

PER CURIAM. On a former appeal in this cause, reported in 152 N. C., 544, the facts will sufficiently appear to indicate the purport of the present decision. It was chiefly urged for error in the present trial that the court below had made unwarranted departure from the rulings made in the former opinion, by which the cause should be tried, and more especially in submitting the case on the position that if the "Daniel Moore" line and the "Jesse Gragg's line" and the line of John Crisp's own land, called for in defendant's grant and made two of the termini of the lines therein and the boundary of a third, "were known and established lines," they would control the calls by course and distance, also appearing in the grant.

We are of opinion, however, that the objection rests on an erroneous concept of the former decision. It is a settled principle with us in the law of boundary, that, when the line of another tract is definitely called for as one of the termini of a call in a grant or deed and this line is fixed and established, it will control a call by course and distance. *Whitaker v. Cover,* 140 N. C., 280, and authorities cited. And where the line of another tract is the one called for and is sufficiently "proved and established," the principle applies, whether such line is marked or unmarked. *Campbell v. Branch,* 49 N. C., 313; *Corn v. McCrary,* 48 N. C., 496. This position was fully recognized on the former appeal, and was well stated by the *Chief Justice* as follows: "It is true that the general rule is that course and distance must give way to a call for a natural boundary, and that the line of an adjacent tract, if well known and established, is a natural boundary. But this is because such natural boundary is usually considered more certain, being at a fixed and definite place, if 'established and known,' and therefore unchangeable and more likely to be the true call in the deed than course and distance, which may, by inadvertence, be incorrectly written down. The reason of the law is the

N
W E
S
Scale 50 P. = 1 Inch

Daniel Moore
50 A.
#2822
E 125 P.
Lynn

S.G #8710 in 1888.
to
J. M. Houck
now
W. L + M. Co.

B st.
28 P.
Branch
Globe Mt.
River
Daniel Moore
Beech
Hickory
80

Daniel Moore
John's

Alexander Martin
200 A
1789.
Daniel Moore

Burnt
Field
Branch

S. 35 W 319½ P.
N 33 W 274 P.
N 200 P.

Maple
W 80 P
Chest'. Oak.
John Crisp
50 A
#720
1868.
N 35 W 100 P

S. 35. E
S. 35. E 280 P
S 33. E
80
A Black Pine

Pine
St.
E 64 P
C
W. Pine
(Now gone)
Black
Pine
St. D.W.
320½ P.
FLAT ROCK.
34 P

Jesse
Deep
John's
Gray
Waters
tract
1792.
S 126 P (214½ P.)
N 126 P. (214½ P.)
N 125 P.
W. Pine
in Island

S.G.
to
D. Moor
50 A.
1899.

125 P
John Crisp
John Sims
25 A.
1850
52 P.
N 13 - W 175 P
St.
Mill Creek
St.

St.
N 80 P
S 35 - E 368½ P.
S 30 - E 320½ P.
S 33 - E 368½ P.
S 25 - E 320½ P.

E 100 P
Maple
St.

Mill Creek

N 48 - E 200 P
Mill Creek
John Crisp 1843
John
100 A
S 48 - W 200 P

St.
3 2
W 8.5 P
St.
St.
St.
S 42 P
John Crisp
25 A.
E 85 P
W. P.
W.O.
N 45 W 80 P
St.

Webb's
River

WILSON ∘ LUMBER ∘ & ∘ MILLING ∘ CO,
VS.
HUTTON & BURBONNIAS.

T. L. Bandy
J. L. Kirby
Surveyors

Nov. 25th 1909.

life thereof. *Ratione cessante, cessat ipsa lex.* The rule of construction which ordinarily prefers the call for the boundary of another tract to course and distance is based upon the reason that the former is usually more certain than the latter, and only applies when the boundary of the other tract is established and well known."

On that appeal, however, a majority of the Court were of opinion that the lines of adjacent tracts, called for and made the termini of two of the lines of defendant's grant and the boundary of a third, to wit, the Daniel Moore line and the Jesse Gragg line, and John Crisp's own line, were not sufficiently established to require or permit the application of the principle, and the calls by course and distance afforded the safer guide to a proper location. On the present trial, additional evidence was offered by defendant tending to show that the Daniel Moore line was a well-known and established line, and there were also additional deeds and testimony offered tending to show that the John Crisp line, referred to and made the last call of defendant's grant, was a well-recognized and established line or lines closing the survey and boundary as contended for and claimed by defendant. This additional testimony, tending as it did to show that these lines of adjoining tracts, called for as termini and boundaries of defendant's grant, were sufficiently proved and established, was such as to permit and require that the question of location should be considered by the jury, on the principles referred to, and we find nothing in the charge of the court or in the other features of the trial which gives plaintiff any just ground of complaint. There is no error, and the judgment for defendant is affirmed.

No error.

CLARK, C. J., dissenting: This case was before us, 152 N. C., 537, where the map is set out which shows the remarkable nature of the defendant's contention in this case. In accordance with that decision and its subsequent approval in the opinion by *Hoke, J.,* in *Bowen v. Lumber Co.,* 153 N. C., 369, there is error on the present appeal, for which there should be a new trial.

"The reason of the law is the life thereof," and "when the reason ceases, the law ceases." These two rules are well recognized by sound common sense and must be observed to save the law from degenerating into mere technicality.

At common law it was held that when a natural boundary is called for it will control course and distance. In *Cherry v. Slade,* 7 N. C., 82, this principle was extended, owing to "the peculiar situation and circumstances of the country at that time," to hold that the line of an adjacent tract when called for should be treated as a natural boundary. The proposition is not true as a matter of fact. The line of another tract is not a natural boundary. It lacks much of being so, for it is artificial, not natural and unchangeable and unmistakable. Hence it should only be treated as such when in the nature of things it is more certain than the course and distance. It ought not to apply when, as in the present case, there is much else in the description which will make the true boundaries beyond question and when to apply the principle will negative the better evidence and be a practical denial of the proper result.

In the present case the patent was issued by the State to Crisp, under whom the defendant claims, for 50 acres, with a plat laid down as a parallelogram on the grant which describes the boundaries as running from the beginning (which is not disputed) "N. 35 W. 100 poles to a stake in Daniel Moore's line; then W. 80 poles to a stake in Jesse Gragg's line; then S. 35 E. 100 poles to a stake in his own line; thence E. with said line to the beginning." The defendant contends that the first line should be extended to Daniel Moore's line, though this would make it 274 poles instead of "100 poles," as stated in the grant; that instead of the second call in the grant "80 poles W. to a stake in Jesse Gragg's line," the second line should be run S. 35 W. 319½ poles to a *corner* of Jesse Gragg's line," though in so doing both course and distance are wide of the mark and the line would cross through two older surveys. The third line in the grant is "S. 35 E. 100 poles to a stake in Crisp's own line," and the fourth line was "and thence E. with said line to the beginning," which of course would be 80 poles. But if this third line is run according to the defendant's con-

tention, it would cut in half another tract and would run 338 poles instead of 100 poles, as called for in the grant, and the fourth line, instead of being "east with said line to the beginning" 80 poles, would run five different courses, aggregating 400 poles, to get back to the beginning.

Instead of the 50 acres granted to Crisp, the defendant will get 700 acres, 650 of which the plaintiff has paid the State for and for only 50 of which the grantor of the defendant paid the State. It is in evidence that the defendant has always listed this land for taxation under oath as 50 acres. To run the first line as the defendant contends, "to a stake in Daniel Moore's line," not only disregards the limitation of 100 poles which is a part of the description of that line, but it totally disregards the second, third, and fourth lines; it disregards the patent and gives the defendant fourteen times as much land as the State granted. It also disregards the plat laid down on the grant as required by the statute, and the fact that the description in the grant and the plat alike call for a parallelogram, and that the defendant's contention will give us a most irregular tract with eight sides instead of four, and whose boundaries will aggregate 1,313½ poles instead of 360, as called for by the grant and plat. Such a *reductio ad absurdum* is its own refutation.

It would be more certain—indeed, it would be absolutely certain—to start at the beginning and reverse the course and distance, which our decisions permit when greater certainty can be ascertained thereby (*Norwood v. Crawford,* 114 N. C., 513), though the Court does not favor reversing unless it is necessary to avoid a palpable mistake, as here, in running the course and distance in regular order. But, as was said in this case, 152 N. C., 541, "When the plat, the courses and distances, and the acreage all correspond, as they do in this case, they are more certain than the wild result which would be obtained by departing from them in attempting to give the preference to the call for "a stake in Daniel Moore's line" when there was no actual survey, and the surveyor and grantee did not know where it was," as was palpably the case.

On that same page, 152 N. C., 541, this Court said: "While acreage is usually postponed to other descriptions, there are cases in which the Court has held that it was a potent, if not a conclusive factor. It was so held in *Cox v. Cox,* 91 N. C., 256. In *Baxter v. Wilson,* 95 N. C., 137, it was held that the number of acres in some cases may have a *controlling effect.* In *Peebles v. Graham,* 128 N. C., 227, the Court says: 'The general rule is that the quantity of land stated to be conveyed will not be considered in determining locations or boundaries. But there is a well-known exception to this: "Where the location or boundary is doubtful, quantity becomes important. *Brown v. House,* 116 N. C., 866; *Cox v. Cox,* 91 N. C., 356." ' The Court further said, quoting from *Mayo v. Blount,* 23 N. C., 283: 'A perfect description which fully ascertains the *corpus* is not to be defeated by the addition of further and false descriptions.' Certainly, no stronger case for the application of this principle can be found than in this, where the courses and distances given in the grant of the tract, which was not actually surveyed, are found to agree exactly with the quantity of 50 acres described and conveyed, and with the plat attached to the grant, and where to discard them would increase the quantity of land to fourteen times that for which the State was paid."

In *Brown v. House,* 116 N. C., 866, the Court refused to extend a line to a stake in the boundaries of another tract when it would have increased the acreage only twice; whereas, in this case, to do so would make the acreage fourteen times as much. On the rehearing in that case, 118 N. C., 870, the Court reaffirmed its ruling and cited *Harry v. Graham,* 18 N. C., 76. "Where the distance called for gave out 30 poles short of the line of the other tract, the Court refused to extend the line 30 poles and held that it must terminate at the end of the distance called for." It also cited *Carson v. Burnett,* 18 N. C., 546, which held that "The course and distance called for must control unless there is another call more definite and certain than course and distance," and cited *Kissam v. Gaylord,* 44 N. C., 116; *Spruill v. Davenport, ib.,* 134; *Cansler v. Fite,* 50 N. C., 424, and *Mizell v. Simmons,* 79 N. C., 182, all to the same effect.

In *Mizell, v. Simmons,* 79 N. C., 190, where the call was "east," which was palpably erroneous, the Court followed the rest of the description and read "west." So, in this case, the Court should omit the palpable misdescription of a part of the first line, "to a stake in Daniel Moore's line," and take the rest of the description of that first line, "100 poles" plus the description in the second line, "80 poles W. to a stake in Jesse Gragg's line," plus the description of the third line, "then S. 35 E. 100 poles to a stake in Crisp's line," and plus the description of the fourth, "then east with Crisp's line" to the beginning, and the acreage of 50 acres and the plat as laid down in the grant, and from these establish the land which was actually granted, for all of these are certain, and the erroneous part of the description in the first line, "to a stake in Daniel Moore's line," is as palpably erroneous as writing "east" when it should have been "west."

There is a maxim in war, "Not to leave an armed fort in the rear without masking it or taking it." At the battle of Germantown, "Chew's House," a stone building, was taken possession of by a small body of the enemy's infantry, perhaps half a company, when their army was in full retreat. One of the American generals insisted on applying the above maxim of war and halted our advancing line to take the "fort." The enemy rallied and the American cause lost a splendid victory and our independence was delayed several years thereby. To apply the above maxim of the land law, which is useful in appropriate cases, to the facts of this case with the most remarkable results which would follow, is to discredit the rule itself and will call for its abrogation altogether. It is merely a judicial opinion as to the weight of evidence. If held and understood, in this case, as an iron-bound rule of such devastating importance as to take precedence of and overthrow all other description that may be far more material and conducive to a correct result and admitting of no exception, this will not make for the ascertainment, but for the denial of the true boundary in all cases where there is more certain evidence. This is to make a judicial opinion as to the weight a jury should give to evidence an irrebuttable rule admitting of no exceptions.

Upon the state of facts in this case the true rule is, as was laid down by us, 152 N. C., 537, and which has been reaffirmed by *Hoke, J.,* speaking for a unanimous Court, in *Bowen v. Lumber Co.,* 153 N. C., 369, where he says that this rule "is never departed from unless accompanying data and relevant facts make it perfectly clear that its application would lead to an erroneous conclusion, as in the recent case of *Lumber Co. v. Hutton,* 152 N. C., 537." After the facts of this case have thus been twice pronounced as not requiring the application of this rule, it ought not now to be held that they do require the application of the rule, notwithstanding the results above summed up.

It is to be doubted if in all the books of the law there can be found a single case where an arbitrary rule as to the weight to be given one description in a deed, which was expressed by judicial decision and not by statute, as a matter of convenience and for the better ascertainment of the truth, is upheld as irrebuttable and admitting of no exception whatever, even when its application will be to contradict all the other boundaries set out, and will increase the acreage fourteen-fold, and will reject entirely the plat which by statute is laid down on the grant. In its proper place and in proper cases, the rule is useful. To apply it here will be mischievous. Even in "the laws of the Medes and Persians" an exception was found, as there is to all rules. But the defendant contends that none shall be permitted to this, however palpably, even painfully, erroneous and wrong the result it shall bring about. If so, then this of itself is an exception to the general rule, that "All rules have their exceptions," for *exceptio probat regulam.*

It was of such as this that Tennyson spoke:

"The old order changeth, yielding place to new,
Lest one good custom should corrupt the world."

As the old Latin maxim has it, *"Quis hæret in litera, hæret in cortice."*

After the twice repeated opinion of the Court, that upon these facts the line could not be extended beyond the boundaries and acreage of the grant and plat, the court below should have so instructed the jury.

BROWN, J., concurs in the dissenting opinion of CLARK, C. J.